Statement of the Case.
MONROE, J.
In December, 1903, the ap? plicant brought suit in the district court for the parish of Madison against Charles C. Heisen and the El Dorado Lumber Company, Limited, for the recovery of a, tract *549 of land lying in the parish and described as the S. E. % section 22, township 15 N. range 11 E., alleging that she had inherited the land as the sole heir of her mother, Mrs. Margaret Ann Gopley; “that said tract was pretendingly and fraudulently assessed and listed * * * in the name of Hughes & Woolsey, who did not own and never had owned said tract, * * * for the taxes of 1895 to 1898, upon the rolls of 1899; that under said void and null assessment the said tract was advertised and sold by the tax collector as the property of the said Hughes & Woolsey, under Act No. 170, p. 346, of 1898, to Bolton Smith and W. M. Murphy; * * * that said alleged purchasers well knew, and it is notoriously understood, * * * that the title to said tract was not in said Hughes & Woolsey, but in your petitioner, and under those conditions, fraudulently induced, as petitioner believes, the said tract to be so illegally assessed, in order that they might acquire a semblance of title thereto; * * * that said so-called sale is an absolute nullity; * * * that the purchasers held the property for a short time and then transferred only such title as they had to one Charles Heisen, * * * without any warranty whatever, but with a distinct disclaimer of such, even as to the retention of the purchase price; that the said Heisen, * * * on or about the 3d of May, 1902, * * * transferred said tract to the E'l Dorado Lumber Company, Limited; tha{ each and every act had and done with reference to said illegal acquisition of said tract is null, and void, and in fraud of your petitioners rights; that said so-called assessment and sale thereunder are unconstitutional, illegal, and void, and particularly violative of due process of law, and is an attempt to confiscate petitioner’s property under the forms of law and without adequate compensation therefor ; * * * that all of said apparent owners of said title have acquired the same with full knowledge, and are bound thereby.” She prays for citation and for judgment declaring the title of said Heisen and the El Dora-do Lumber Company to be null, recognizing her title, and putting her in possession.
The El Dorado Lumber Oompany pleaded the prescription of three years, as established by article 233 of the Constitution, and by law denied the charges of fraud, and alleged that it had purchased in good faith, and that plaintiff and her authors, if they ever had title, had long ago abandoned it, and that they had never taken possession of, or exercised any dominion over, or paid taxes on, said land. The company then called its vendor, Heisen, in warranty and prayed for judgment in its favor. Heisen, through a curator ad hoc, pleaded the prescription of three years to the plaintiff’s demand, and the general issue to the demand in warranty.
Upon the trial, most of the facts were admitted, and, as admitted or proved, present the following case, to wit: The land here claimed was acquired by entry from the state, in 1856, by Mrs. Margaret Copley, a widow, then residing in the parish of Ouachita, and her title was registered in the book of abstracts of entries, in the parish of Madison, and, later, probably about 1889 or 1890, her name was placed upon the subdivision in question as the same is delineated upon the official map of the parish, made by F. B. Dawson and in constant use by the officers of the parish. The records of the parish fail to show any alienation by Mrs. Copley (who died in St. Louis in 1892) or her heirs, but the land had not been assessed, no taxes had been paid, and no one had been in actual possession of it, for 40 years prior to 1898. Mrs. Copley does not appear to have resided in Madison Parish and the plaintiff, who is her daughter and sole heir, testifies that her mother did not know that she owned said land. Plaintiff’s counsel, who formerly lived in Ouachita, knew Mrs. Copley, and testifies that she was known to a former tax collector of Madison parish, who is still living there, *550 and that he (the counsel) never heard of anyone inquiring concerning her. There is, however, nothing to show that any one in the parish of Madison knew of the whereabouts of Mrs. Copley at the time of her death, or of the fact of her death, or that any one knew the plaintiff, or knew that she was the heir of Mrs. Copley, and it is not suggested that the succession of Mrs. Copley was ever opened, in the parish of Madison, or elsewhere. About the year 1898, W. M. Murphy was employed by the police jury and levee board of Madison Parish to find lands subject to taxation, but which were not being taxed, and in the course of that employment, he caused the land in question to be assessed, on the roll of 1898, for the taxes of that year and of the three preceding years, to “Hughes & Woolsey, or unknown owner”; Hughes & Woolsey representing the names of two married daughters of Thomas Ribby, who owned a great deal of land in the parish, but who had never owned the land so assessed. Why Mr. Murphy caused this land to be thus assessed is not explained, though he testified in the case, and it seems from his testimony that he knew that it appeared on the official map of the parish as the property of Mrs. Copley, and it does not appear, from his testimony or otherwise, that he obtained any other information concerning it from the abstracts and records examined by him. It may, also, be remarked, in this connection, that neither of the defendants took the stand to deny the knowledge of fraud imputed to them. Under the assessment as thus made, and a like advertisement, upon June 10, 1899, the land in dispute was sold by the tax collector to Bolton Smith and W. M. Murphy, whose title was recorded, June 20, 1899, and on December 7, 1899, Smith and Murphy sold to the defendant Heisen, a nonresident of the state, by an act which declares that:
“This sale is made by quitclaim only, without any warranty; that the vendee waives all claims to the restitution of the price he has paid, in case of trouble or eviction, the vendors knowing nothing of their titles, and making no representations with reference to the same, the vendors selling such interest as they have in the property, and nothing more.”
This act covering the sale of 5,678.69 acres, was made for $1,794.50, and was duly recorded, May 3, 1902. Heisen sold the land so required to the El Dorado Lumber Company, Limited (his codefendant), by an aet which was recorded, May 12, 1902. The fax purchasers or their vendees have paid taxes since the tax sale, but have not taken actual possession of the land.
Opinion.
The questions to be decided are: Does the prescription relied on apply to the facts disclosed, and if so, does such application amount to a taking of plaintiff’s property without due process of law?
Article 210 of the Constitution of 1879 reads:
“There shall be no forfeiture of property for the nonpayment of taxes, but at the expiration of the year, * * * the collector shall, without suit, and after giving notice to the delinquent, in the manner to be provided by law [which shall not be by publication except in the cases of unknown owners], advertise for sale the property on which the taxes are due in the manner provided for judicial sales, 'and, on the day of sale, he shall sell such portion of the property as the debtor shall point out, and, in case the debtor shall not point out sufficient property, the collector shall, at once, and without delay, sell the least quantity of property which any bidder will buy for the amount of the taxes, interest and costs. The sale shall be made without appraisement, and the property shall be redeemable at any time for the space of one year, by paying the price given, with 20 per cent, and costs added. No sale of property for taxes shall be annulled, for any informality in the proceedings, until the price paid, with 10 per cent, interest, be tendered to the purchaser. All deeds of sale made, or that may be made, by collectors of taxes, shall be received by the courts in evidence as prima facie valid sales.”
It will be observed that this article established no prescription against actions to annul tax sales and, in construing its provisions, requiring notice to the delinquent tax debtor, and those of the statute law, requir *551 ing an assessment in the name of the owner, as conditions precedent to the sale of property for taxes, with the provisions of the statutes establishing different terms of prescription against such actions (Civ. Code, Art. 3542; Act No. 105, p. 154, of 1874; Act No. 85, p. Ill, of 1888), it was held by this court that the prescription so established did not apply in cases where there was no valid assessment in the name of and no notice to the. delinquent tax payer. (Lague v. Boagni, 32 La. Ann. 912; Breaux v. Negrotto, 43 La. Ann. 426, 9 South. 502). There were, besides, other grounds upon which it was hoped by some and feared by others that tax titles might 'be annulled, notwithstanding the prescription so established; and upon the whole the condition of the law was unsatisfactory, as well to the state as to the public at large, since the state, as the adjudicatee at tax sales, was the apparent owner of large bodies of land from which it derived no revenue, of which it was unable to dispose, and which was practically kept hors du commerce. When, therefore, in 1898, the convention charged with the adoption of a new Constitution assembled, one of its most important duties was the framing of an ordinance which would at once enable the state to enforce the collection of its taxes and bring the land referred to into the market. The first paragraph of the ordinance adopted in the discharge of this duty (article 233 of the present Constitution) is a reproduction of article 210 of the Constitution of 1879, save as to certain particulars, which need not be here commented on further than to say that they indicate the purpose to establish a rule upon the basis of which tax titles should be given a definite value. In the new as in the old article tax deeds are required to be received in evidence as prima facie valid. But the new article contains much that was not in the old, and among other things, the following, to wit:
“No sale of property shall be set aside for any cause, except on proof of dual assessment, or, of payment of the taxes, for which the property was sold, prior to the date of the sale, unless the proceeding to annul is instituted within six months from the service of notice of the sale, which notice shall not be served until the time of redemption shall have expired, or, within three years after the adoption of this Constitution, as to sales already made, and within three years from the date of the recordation of the tax deed, as to sales made hereafter, if no notice be given. The manner of notice and the form of proceeding to quiet tax titles shall be provided by law.”
Act No. 101, p. 127, of 1'898, was passed in conformity to the foregoing requirement, to provide the manner of notice and form of proceeding to quiet tax titles, and several proceedings instituted thereunder, were brought before this court on appeal.
In Canter v. Williams’ Heirs, 107 La. 77, 31 South. 627, it appeared that the decedent, Williams, entered a tract of land in the parish of Calcasieu, as a homestead, and that he subsequently moved to New Orleans, where he died; that in 1883 (whether before or after his removal does not appear), the land was sold for the taxes of 1882, and resold from one person to another, until it was acquired by the plaintiff, and “it would seem” (says the court) “the possession of the land accompanied the acts of transfer.” The plaintiff having brought suit to quiet his title, the defendants (heirs of Williams), by way of defense, attacked the title, on various grounds, which, in the report of the case, as decided on appeal, are not specifically set forth. The views of the court as to the meaning and proper application of article 233 of the Constitution, in so far as that article establishes a prescription against actions to annul tax sales, are, however, to some extent expressed in the following language, to wit:
“Among other defenses set up is not found that of dual assessment of the property, nor that of payment of taxes, for which the property was sold, prior to the date of the sale. As to other causes or grounds for setting aside the tax title, we do not find that any proceed *552 ing to annul was instituted within three years of the adoption of the Constitution. Viewing the various defenses set up herein in bar of plaintiff’s demand for the confirmation of the tax title under which he claims, as a proceeding to annul they cannot be entertained, for they are asserted too late; * * * as against them, the pre-emption or prescription of the Constitution is invoked. The provision of the Constitution was intended to have the effect of a statute of repose. After the lapse of three years from the adoption of the Constitution, the party in possession, under his tax title, duly recorded, cannot be disturbed except for the two causes mentioned in article 233 — that of dual assessment, and that of antecedent payment of taxes. Certainly the claimant, owner, out of possession, as here, cannot be heard to urge other causes for setting aside the adverse tax title or preventing confirmation.”.
In the case of Ashley Co. v. Bradford, 109 La. 641, 33 South. 634, it appeared that C. J. Mitchell entered a tract of land in the parish of Madison (where he then lived), in 1856; that he probably paid no taxes on it, and that he subsequently moved out of the state and died in Vicksburg in 1886; that in 1887 the land for the first time (certainly since the civil war) was assessed to persons claiming under the original title, that is to say, to the succession, and thereafter to the widow and heirs of Mitchell, and later still to Bradford, their transferee; that in the meanwhile, to wit, from 1870 to 1877, the tract in question had been erroneously included in the assessment of an adjoining and larger tract, known as “Ararat,” of which Milford (or M. A.) Hunter appeared to be the owner, and that in 1874, it was adjudicated to the state under some of the assessments so made, and from the state (through mesne conveyances, including a subsequent assessment in the name of John B. Stone, and a subsequent adjudication to the state) passed to the Ashley Company, by which the suit was brought against Bradford, as the transferee of the Mitchells, and others, to quiet the title. In dealing with the issues thus presented, this court, through Blanchard, J., said:
“Among the defenses set up by way of exception and answer, we do not find that of dual assessment of the property *' * * nor * * * payment of the taxes, for which the property was sold prior to the date of the sale.”
The opinion then refers to the prescription established by the Constitution, and proceeds:
“Defendants seek to avoid the effect of this by contending * * * that when the 80 acres in controversy were assessed, in 1870, and the following years, to M. A. Hunter, the latter was not the owner of the same, and that the listing of their property to him was an absolute nullity, as was also the sale of the property under the assessment, which followed.”
Pretermitting, however, the immediate question thus presented, the opinion then proceeds:
“Following Stone’s purchase, the property was assessed in his name and he paid the taxes for two years. This assessment was not void. The law gives effect to it, and when, after two years, Stone failed to pay taxes, and the property was sold by the tax collector, a valid title could be acquired at such sale. * * * This is the title which the plaintiff, through mesne conveyances, holds. It is such a title as the constitutional provision (even if it went no further), undoubtedly intended to protect, after three years, from all assaults except those founded on dual assessments or the antecedent payment of the taxes for which the property was sold. This is so, unless it be that the prescription of the Constitution does not apply otherwise than in cases where the tax purchaser takes and holds for the prescriptive period the actual, corporeal possession of the property.”
In the case to which we are now referring, as in the ease before the court, no actual possession was shown, either in the original owner or, in the tax purchaser, or those claiming under him, and it was held that constructive possession resulted from the recorded tax title and was a sufficient basis for the prescription established by the Constitution, the language of the court being:
“We hold that tax titles accompanied by actual possession or constructive possession, only, in cases where there is no actual possession by any one, are unassailable, save for the two causes mentioned, after the lapse of the time given the record owner to institute proceedings to annul.”
In Carey v. Cagney, 109 La. 77, 33 South. 89 (which was decided subsequently to the Ashley Bradford Case), the defendants, Cag *553 ney & Co., had brought suit to be put in possession under a tax title and were met by an injunction which resulted in the consolidation of the cases under the title above given. Cagney & Co., in support of the claim asserted by them under the tax title, having urged the prescription established by the Constitution, ,the court, after referring to the rulings which had been made in the two cases hereinabove mentioned, said:
“But here we have the case of a tax purchaser, who has never had either the actual or constructive possession of the property; a case where the record owner is now and has been always in the corporeal possession of the property.”
And it was held (quoting from the syllabus) as follows:
“There must be a possession, either actual or constructive, on the part of the holder of a tax title, to render effective, in his behalf, the statute of repose embodied in article 233 of the Constitution of 1898. When the original owner remains in the actual, corporeal possession of the property, such possession is in continuous conflict with the claim arising under the tax title, and it cannot be held, under such circumstances, that any prescription, operating as a statute of repose, runs in .favor of the holder of the tax title. Where the original owner was in actual possession at the time of the sale, and so remains in possession, the initiative is not upon him. He stands on his possession against the world; it is a badge of ownership, and no prescription can be held applicable that would operate to deprive him of the right to defend that possession and the title upon which it is predicated. While constructive possession, springing from a later title deed, ousts constructive possession, which had been held under an earlier deed, constructive possession can in no case have the effect of ousting actual possession, held under an adverse title giving color of right.”
In Pitre v. Schleslinger, 110 La. 234, 34 South. 425, the plaintiff having brought suit to quiet a tax title, it appeared, that after the adjudication to and subsequent sale by the state, the owners continued to claim ownership and possession of the property, and that the state, through its officers, continued to assess it to, and collect the taxes from the owners, and it also appeared that in order to make out the time relied on for the prescription, it was necessary to add to the period during which the plaintiffs had held the title (from the state, through the auditor), that during which, the title had been vested in the state, under the adjudication. It was, however, held that the state was estopped, by the action of its officers, in so assessing the property and receiving the taxes thereon, from availing herself of the plea of prescription, and that article 233 of the Constitution must therefore be held not to be applicable to the case, which is distinguished from that of Ashley Co. v. Bradford, in “that there the claimants under the tax title had no need to join their possession to that of the state in order to fill out the prescriptive term of three years.”
The cases thus cited cover the real issues, growing out of the application of the prescription established by the Constitution to tax sales, which have been decided by this court, and the issues thus decided include those which are presented in this case, unless it could be found that for the purposes of that prescription there is a substantial difference between the case of a tax sale based upon an assessment made in the name of a tax purchaser with a recorded title, who had acquired the property at a sale made under an assessment in the name of one who had no color of title, and the case of a tax sale based directly upon an assessment in the name of one without color of title, and we are of opinion that, for the purposes mentioned there is no such difference and that in neither case is the sale open to attack by reason of the illegal assessment of the property. It must be remembered that whilst it may be and no doubt is necessary to assess property for the purposes of taxation, the taxpayer has no inherent right, which is paramount to the organic law of the state, to require that property owned by him shall be assessed in connection with his ownership. So long, therefore, as the property is actually assessed, whether in the name of one person or another, or in no name, there is an intelligible basis for the levy, *554 and for the sale to enforce the payment of the tax, and if the law, to which alone he can look for Ijis remedy, provides that the owner must bring this action to annul such sale within three years, or else that such action shall be barred, he must comply with the condition imposed or suffer the consequence imposed. The Constitution of the state no doubt contemplates that property shall be assessed, as a necessary condition to its taxation, and the General Assembly has rightfully exercised its authority in providing that the assessments shall be made in a particular manner, from which it follows that unless they are so made, they may be annulled, so long as they are open to attack. But it was competent for the General Assembly to have directed the assessors to assess property in the names of the owners, and at the same time to have declared that any actual assessment should be valid, if not attacked within a certain, time, even if not so made, and a fortiori was it competent for the framers of the Constitution so to declare, and this is what the framers of the Constitution have done. They have said, in substance, to the taxpayer:
“It is within the contemplation of this constitution that your property shall be assessed for the purposes of taxation, in your name, and provision is made that you shall be notified of any proceeding which may be taken to sell it for the taxes to be levied upon such assessment, but should the assessors fail to make the assessment as contemplated, and should you fail to receive the notice as provided, and for those causes, or ‘for any cause’ (save dual assessments or the prior payment of the tax) desire to annul such sale, when made, you must institute your proceeding within three years from the date of the registry of the tax deed; otherwise, you shall be without remedy, and shall not be heard.”
This court, in the eases cited, has held that this admonition was not intended for a taxpayer who is allowed after the sale to remain in possession of his property, and that it is inapplicable (so long as the title remains vested in the state) in a case where the property, having been adjudicated to the state, the state continues to assess it to the taxpayer, and to receive the taxes from him. The reasons which' underlie this ruling dO' not, however, justify the conclusion that the admonition is inapplicable in the instant ease, where the taxpayer was never in actual possession, has never had the property assessed to her, has never paid any taxes on it, and has no other complaint to make than that the assessment was not made in her name, and that she was not notified of the intention to sell for the taxes; for both of which failures in the execution of the law, she alone was to blame, since it does not appear that any one in the parish of Madison knew that Mrs. Gopley, the registered owner of the property in question, was dead, or that the plaintiff was her heir, and so far as the record shows, an assessment in the name of an “unknown owner” would have been good, or certainly as good as an assessment in the name of the deceased owner, and would have been as effective in conveying information to the plaintiff.
It is true that the petition imputes fraud and knowledge of fraud to the defendants, and that they have not availed themselves of their opportunity to deny the imputation, but this failure is insufficiently supported by proof, and cannot, of itself, make out a case-of fraud, a 'condition of affairs which seems to be understood by plaintiff’s counsel, who does not, in his brief, refer to the subject.
The only remaining question is whether the' prescription established by the Constitution of the state, as applied in this case, deprives, the plaintiff of her property without due process of law, in violation of the Constitution of the United States. Concerning laws establishing prescription, different authorities, express themselves as follows, to wit:
“The policy of such laws is unquestionable, and the power to enact them is undisputed.” Cooley on Taxation, 376.
“Public policy demands the enactment of such laws and they are universally sanctioned by the practice of nations and the consent of mankind.” Black on Tax Titles, 463.
*555 In McElmoyle v. Cohen, 13 Pet. 312, 10 L. Ed. 177, the Supreme Court of the United States had occasion to consider a statute of the state of Georgia, establishing a prescription of five years against suits on foreign judgments, in its relation to a judgment obtained in another state, which, under the Constitution of the United States, was entitled to full faith and credit in Georgia, and the property in which, it was said, could not be devested by a statute of that state, and Wayne, J., as the organ of the court, said:
“It would be strange if, in the now well understood right of nations to organize their judicial tribunals according to their notions of policy, it should be conceded to them in every other respect than that of prescribing the time within which suits shall be litigated in their courts. Prescription is a thing of policy, growing out of the experience of its necessity; and the time after which suits or actions shall be barred has been, from remote antiquity, fixed by every nation in virtue of that sovereignty by which it exercises its legislation for all persons and property within its jurisdiction.” See, also, Bank of Alabama v. Dalton, 9 How. 528, 13 L. Ed. 242; Christmas v. Russell, 5 Wall. 300, 18 L. Ed. 475.
In the exercise of the sovereign power thus referred to, the General Assembly of this state has declared that all actions for the recovery 'of immovable property or an entire estate shall be prescribed by 30 years. Civ. Code, arts. 1023, 3548, and this court has held that the heir who has permitted 30 years to elapse without having done any act showing an intention to accept a succession is barred by prescription from any right as heir. Succession of Waters, 12 La. Ann. 97. The General Assembly has also declared that personal actions arise from offenses and quasi offenses such as theft or slander (Code Prac. art. 31), and that such actions are barred by the prescription of one year. Civ. Code, art. 3536. The power that created the General Assembly has declared that actions such as this are barred by the prescription of three years, and the time and opportunity being reasonably sufficient, the plaintiff is no more deprived of her property without due process of law by the application of this rule than is the heir who fails to accept the succession, by the 30 years prescription, or the person whose property has been stolen, by the prescription of one year. Our learned Brethren of the Court of Appeal, expressing themselves in exceptionally able opinions, originally and upon application for rehearing, reached the conclusion at which we have arrived, and their judgment will remain undisturbed.
It is therefore ordered, adjudged, and decreed that this application be now dismissed, at the cost of the applicant.