(70 South. 493)

No. 21437.

BALDWIN LUMBER CO. v. DALFERES. (MERMENTAU SHINGLE MILL, Intervener and Third Opponent).

(Dec. 13, 1915. Rehearing Denied Jan. 10, 1916.)

*(Syllabus by the Court.)*

1. TAXATION ⬮796—SALE FOR DELINQUENT TAXES—RESALE BY STATE—ATTACK ON VALIDITY.

The former owner of property that has been sold to the state for delinquent taxes, and sold by the state to a third party after the time for redemption has expired, has no interest in contesting the validity of the sale by the state to the third party if the tax sale to the state was valid, or if prescription has remedied the illegalities in the tax sale to the state.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. §§ 1578–1581; Dec. Dig. ⬮796.]

2. TAXATION ⬮805 — PROPERTY SOLD FOR TAXES—POSSESSION OF ORIGINAL OWNER— "CIVIL POSSESSION"—LIMITATIONS.

It requires the actual physical possession, by the original owner of property that has been sold for taxes, to prevent the running of the prescription of three years in favor of the holder of the tax title. The fiction, called civil possession, resulting from the registry of the title of the original owner, will not suffice.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. §§ 1593–1597; Dec. Dig. ⬮805.]

3. TAXATION ⬮805—TAX SALE—PURCHASER FROM STATE—ACTIONS—LIMITATIONS.

The prescription of three years runs in favor of the state as the adjudicatee at a tax sale, and inures to the benefit of a subsequent purchaser from the state.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. §§ 1593–1597; Dec. Dig. ⬮805.]

Appeal from Eighteenth Judicial District Court, Parish of Lafayette; William Campbell, Judge.

Action by the Baldwin Lumber Company against Max D. Dalferes, wherein the Mermentau Shingle Mill filed intervention and third opposition. From an adverse judgment, plaintiff appeals. Reversed and remanded, with directions.

Mouton & De Baillon, of Lafayette, and Borah, Himel & Bloch, of Franklin, for appellant. Medlenka & Bruner, of Crowley, and Jerome Mouton, of Lafayette, for appellees.

O'NIELL, J. Alleging ownership and possession for more than a year, the plaintiff sued, primarily, to be maintained in its possession, and, in the alternative, to be recognized as the owner, of timber lands in the parish of St. Martin, described as follows, viz.:

(1) Lots 5, 8 and 9, of section 4, township 10 S., range 5 E., containing 83.46 acres.

(2) The north half of lots 5 and 6 in sec-

tion 41, township 10 S., range 5 E., containing 260 acres, more or less.

(3) Fractional section 8 and all of section 9, in township 10 S., range 5 E.

(4) Lot 5 and another fractional part of section 32, township 9 S., range 5 E., and lots 3 and 4 of section 5, in township 10 S., range 5 E., containing 144.84 acres, as shown within the letters A, C, and G on a map made by Rybski in May, 1857, and attached to the. act of sale by Crow Girard to the Baldwin Lumber Company, dated in August, 1911.

The plaintiff alleged that the defendant, Dalferes, was trespassing and cutting down the trees on the lands above described; that he had made 2,000,000 feet of the timber, of the value of $6,000, into cross-ties, and had removed them from the land. The plaintiff prayed that the cross-ties taken from the land and remaining in the parish of St. Martin or removed to the parish of Lafayette be sequestered; that the defendant be enjoined from committing any further depredations on the land; that plaintiff recover the cross-ties and $6,000 damages, and be maintained in its possession of the lands. In the alternative, the plaintiff prayed to be recognized as the owner of the lands.

The suit was filed on the 10th of November, 1911, and is now before this court the third time on appeal by the plaintiff.

On proper allegations, affidavit, and bond, a writ of injunction issued, restraining the defendant from further operations on the lands, and writs of sequestration issued for the seizure of the timber already cut and the cross-ties made therefrom. The sheriff of the parish of Lafayette made a return on the writ of sequestration, stating that he had seized 1,312 cross-ties cut and removed from all of the land, which he described precisely as it is described in the plaintiff's petition. The sheriff of the parish of St. Martin made a return, saying that he had seized and sequestered 2,040 cross-ties located on lots 5, 8, and 9 of section 4, and on the north half of lots 5 and 6 in section 41, in township 10 S., range 5 E.

On the 2d of December, 1911, the commercial partnership styled Mermentau Shingle Mill filed a petition of intervention and third opposition, alleging that the cross-ties which had been sequestered were not the property of the defendant, Dalferes, but had been purchased from him by the third opponent, and that the plaintiff knew that fact before instituting this suit. The opponent alleged that, by preventing the payment of $1,501, due from the Houston & Texas Central Railroad Company, for 3,661 cross-ties sold and delivered to the railroad company at 41 cents each, the plaintiff had caused the railroad company to cancel a contract to purchase 5,000 cross-ties from opponent, on the undelivered portion of which the opponent had been deprived of a profit of $198. The opponent alleged that it had also suffered damages to the extent of $1,000 by injury to the firm's credit and the loss of the patronage of the railroad company; and that opponent was damaged in the further sum of $500 for attorney's fees, and $500 for the loss of time and for worry and expense occasioned by the illegal seizure of opponent's property.

The intervener or third opponent alleged, in the alternative, that, if the court should hold that the title to the cross-ties was not vested in the opponent by its purchase from the defendant, Dalferes, and if the plaintiff had a right to seize them, then that the opponent had a lien and privilege on them to secure the payment of $1,638.55, which had been paid by opponent to the defendant, Dalferes, as a partial payment of the purchase price of the cross-ties, and which had been used by him in paying for the labor in making and getting out the cross-ties and loading on cars the portion delivered to the railroad company.

The prayer of the petition of intervention and third opposition was for a judgment recognizing opponent to be the owner of the

cross-ties sequestered, dissolving the writs of sequestration and condemning the plaintiff to pay damages in the sum of $2,198 and 8 per cent. interest on the $1,501 withheld by the railroad company from the 9th of November, 1911. In the alternative, opponent prayed that, if the court should hold that the title of the cross-ties was not acquired by opponent's purchase from the defendant, Dalferes, then that a lien and privilege on the ties be recognized in favor of opponent to secure the $1,638.55 paid by opponent to the defendant, Dalferes, on account of the purchase price of the ties, and used by him in paying the laborers for cutting and making them, getting them out of the swamps and loading the ties, which were delivered to the railroad company.

The Houston & Texas Central Railroad Company thereafter paid into the registry of the court the $1,501 due for the ties which had been shipped when the suit was filed, and the opponent, Mermentau Shingle Mill, dissolved the sequestration on bond and shipped the ties which had been sequestered.

On the 15th of December, 1911, the defendant, Dalferes, filed four exceptions to the plaintiff's petition, viz.: First, that it contained two inconsistent demands, one founded on a possessory action, and the other, in the alternative, on a petitory action; second, that the allegations of the petition were so vague and uncertain that the defendant could not properly answer them; third, that the law did not allow a writ of sequestration in aid of a possessory action, or an action for damages arising ex delicto; and, fourth, that the petition did not disclose a cause or right of action.

The defendant's exceptions were tried and submitted, and, on the 26th of December, 1911, judgment was rendered, maintaining them, dismissing the plaintiff's suit, dissolving the writs of injunction and sequestration, and reserving the defendant's right of action for whatever damages he had sustained.

On appeal to this court, the judgment was annulled and set aside, the writs of injunction and sequestration were reinstated, and the case was remanded to be proceeded with in accordance with the view expressed, that the plaintiff was entitled to prosecute at least one or the other, the possessory or the petitory, action. See Baldwin Lumber Co. v. Dalferes, 130 La. 712, 58 South. 519.

After the case was returned to the docket of the district court, and a preliminary default had been entered against the defendant, Dalferes, on the 22d of June, 1912, he filed a general denial of the allegations of the plaintiff's petition. On the 3d of December, 1912, the plaintiff filed an exception to the petition of intervention and third opposition of the Mermentau Shingle Mill, that the opponent's petition did not disclose a cause or right of action for demanding recognition of a lien or privilege on the cross-ties sequestered; and, reserving the benefit of this exception, the plaintiff, as defendant in the third opposition, denied generally the allegations of the petition of intervention and third opposition of the Mermentau Shingle Mill, and especially denied that the defendant, Dalferes, ever had a title to the timber or cross-ties which the opponent claimed to have purchased from him. The case was then assigned for trial on the 9th of December, 1912, and, on the 6th of that month, the assignment was set aside. On the 3d of February, 1913, the defendant, Dalferes, filed a motion to compel the plaintiff to elect whether it would prosecute the possessory or the petitory action. The motion was argued and submitted a few days later, and, on the 24th of February, 1913, judgment was rendered, sustaining the motion and allowing the plaintiff four days in which to elect whether it would prosecute the possessory or the petitory action. On the 3d of March, 1913, on motion of defendant's counsel and on his showing that the plaintiff had not complied

with the order to elect which demand would be prosecuted, judgment was rendered again dismissing the plaintiff's suit. On appeal to this court, the judgment was reversed on the ground that the motion to compel the plaintiff to elect was filed too late, after an answer had been filed; and the case was again remanded to be proceeded with on its merits. See Baldwin Lumber Co. v. Dalferes, 133 La. 666, 63 South. 261.

When the case was again reinstated on the docket of the district court, the defendant filed a supplemental answer, renewing his general denial of the allegations of the plaintiff's petition, and alleging that he was in possession under a contract of sale from Mrs. Clarisse Martin, widow of William Campbell, acting for herself and her co-owners, the heirs of Vallery Martin, deceased, of all of the timber on the tract of about 150 acres in sections 40 and 41, in township 10 S., range 5 E., adjoining Lake Carlo. The defendant alleged that this tract of land was inherited by the widow, Clarisse Martin Campbell, and her brother, Vallery D. Martin, from their father, Andre Valerein Martin, who had acquired it in an act of partition among the heirs of his father, Andre Martin, dated the 29th of September, 1842, and duly recorded in the conveyance records of both parishes, Lafayette and St. Martin. The defendant alleged that he had taken possession of the land under his contract on or about the 20th of October, 1908, and had retained the actual, open, and hostile possession continuously from that time until he was interfered with by the writs of injunction in this suit. He alleged that practically no timber was severed from the land after the 23d of September, 1911, the date of the alleged purchase by the plaintiff of a part of this tract of land. He alleged that, as soon as the cross-ties were made from the timber cut from this land, they were sold and delivered to the Mermentau Shingle Mill, under a contract with that firm, and that this was known by the plaintiff before the suit was filed, except as to the ties seized on the land. He called in warranty his alleged vendors, namely, Mrs. Clarisse Martin, widow of William Campbell, Louis Judice, Ignace Martin, Armand Martin, Mrs. Marie Martin, wife of L. F. Guerre, John Martin, Theresa Martin, Albert Martin, Joseph Bonneville, and Martin B. Martin.

The plaintiff's counsel objected to the filing of the defendant's supplemental answer and the call in warranty, on the ground that it contained new matters of substance, changed the issues materially and came too late, the case having been assigned for trial. The objections were overruled, the supplemental answer was ordered filed, and the alleged vendors of the defendant were ordered cited to answer the call in warranty and to defend this suit; to which rulings the plaintiff's counsel reserved a bill of exceptions, which is now urged on appeal.

Mrs. Clarisse Martin Campbell appeared on the 2d of February, 1914, in response to the call in warranty, and prayed for oyer of the plaintiff's titles.

On the 16th of February, 1914, the defendant, Dalferes, filed another supplemental or amended answer, reiterating all of the allegations of his first supplemental and amended answer, and adding that, after filing it, he had learned that the coproprietors of the land described therein (besides Mrs. Clarisse Martin Campbell) were the surviving children and grandchildren of the deceased, Vallery D. Martin, issue of his marriage with Lodoiska Dejean, namely, Arsene Martin, wife of P. Ignace Mouton; Cleonise Martin, wife of Alcee Judice; Joseph D. Martin, Adrien Martin, and Josephine Martin (the last three having assigned their interest to Louis Judice); Joseph Bonneville, the only surviving child of the deceased M. Matilde Martin Bonneville, whose hus-

138 LA.—17

band is also deceased; and the following named surviving sons and daughters of Andre D. Martin and his wife both deceased, namely, Ignace Martin, J. Armand Martin, Mrs. Marie Martin Guerre, wife of L. F. Guerre, John B. Martin, Mrs. Therese Martin Simoneaux, and Albert L. Martin; and also Marie B. Martin, the only surviving daughter and sole heir of the deceased, Bossier Martin, who was the sole issue of the second marriage of Vallery D. Martin with Anthenaise Bossier.

The defendant prayed that all of the above-named heirs of Vallery D. Martin be called in warranty to defend this suit, and that curators ad hoc be appointed to represent those who were alleged to be absent from the state. The plaintiff's counsel renewed their objections to this second supplemental answer and call in warranty, which were overruled; and another bill of exceptions was reserved and is urged on appeal.

The plaintiff answered Mrs. Clarisse Martin Campbell's prayer for oyer, on the 10th of March, 1914, by filing certified copies of the following deeds, with certificates of registry in the conveyance records of St. Martin parish, viz.: (1) An authentic act of sale by James F. Prohaska to the plaintiff of the tract of 83.46 acres described as lots 5, 8, and 9 of section 4, township 10 S., range 5 E., dated the 17th, and recorded on the 18th of April, 1911; (2) an authentic act of sale of the same property by F. E. Delahoussaye to James F. Prohaska, dated the 9th, and recorded on the 22d of March, 1907; (3) an authentic act of sale by Crow Girard to the plaintiff, dated the 21st of August and recorded on the 30th of September, 1911, conveying the tract of 144.84 acres, described as part of fractional section 32, lot 5 of section 32, in township 9 S., range 5 E., and lots 3 and 4 of section 5, township 10 S., range 5 E., all as shown by the letters A, C, and G on the map made by J. Rybiski, the said land having been acquired by the vendor, Girard, from Charles S. Babin by act of sale recorded in Conveyance Book 49, p. 720, entry No. 25419 of the recorder's office of the parish of St. Martin; (4) the assessment rolls of St. Martin parish for 1885, showing the assessment of the land described as 548 acres, being western part of section 79, township 9 S., range 5 E. and section 41, township 10 S., range 5 E. in the name of "Unknown Rep. of Francois Moreau;" (5) the tax deed made by the sheriff and ex officio tax collector of St. Martin parish to the state of Louisiana, of the 548 acres of land described above, assessed to the unknown representatives of Francois Moreau, dated the 1st, and recorded on the 8th, of May, 1886; (6) the sale dated the 3d and recorded on the 14th, of June, 1889, made by the sheriff and ex officio tax collector of St. Martin parish to Alex Thibodeaux and Charles S. Babin, Jr., of the 548 acres of land above described, which had been adjudicated to the state for the unpaid taxes due by the unknown representatives of Francois Moreau on the 1st of May, 1886; (7) an authentic act of partition between Charles S. Babin and the widow and heirs of Alexander Thibodeaux, deceased, dated the 24th, and recorded on the 27th, of July, 1901; wherein Charles S. Babin acquired (with other lands) the north half of lots 5 and 6 in section 41, and Cidalise Castile Thibodeaux, widow of Alexander Thibodeaux, acquired (with other lands not in dispute) the south half of the lots 5 and 6 in section 40, in township 10 S., range 5 E., all as shown on a sketch annexed to the act of partition; (8) the assessment roll of St. Martin parish for the year 1907, showing the assessment of the north half of lots 5 and 6 in section 41, township 10 S., range 5 E. (and other lands, not in dispute), in the name of C. S. Babin; (9) act of sale by the sheriff and ex officio tax collector of the parish of St. Mar-

tin of the north half of lots 5 and 6 of section 41, township 10 S., range 5 E. containing 135 acres (together with other land, not in dispute), to the state of Louisiana, dated the 23d of May, and recorded on the 11th of June, 1908; (10) the patent from the state of Louisiana to the Baldwin Lumber Company, showing the purchase at sheriff's sale on the 23d of September, 1911, under the provisions of Act No. 228 of 1910, of the north half of lots 5 and 6 of section 41, in township 10 S., range 5 E., containing 135 acres (together with other land, not in contest), the said patent being dated the 1st of December, 1911, and recorded in the state land office on that day and in the recorder's office in St. Martin parish on the 7th of December, 1911.

On the 13th of March, 1914, the plaintiff filed a supplemental answer to the prayer for oyer, alleging that the issuance of the original patent by the United States to Francois Moreau, for all of section 41, in township 10 S., range 5 E., was shown by the register's or commissioner's report No. 206, in the American State Papers.

In their answers, filed on the 25th of April, 1914, to the call in warranty and to the petition of the plaintiff, the warrantors denied that the plaintiff had a title or had ever had possession of the north half of lots 5 and 6 of section 41, in township 10 S., range 5 E. They alleged that they were the owners and possessors of the said lot 6, having acquired the title as follows: That Francois Moreau made an authentic act of sale, on the 28th of September, 1811, to the heirs of Claude Martin of the tract of land in section 41, township 10 S., range 5 E., as a part of which lot 6 was designated in an act of partition made subsequently among said heirs of Claude Martin; that in the said authentic act of partition, dated the 29th of September, 1834, the aforesaid lot 6 was allotted and conveyed to Andre Martin, one of said heirs of Claude Martin; that,

at the death of the aforesaid Andre Martin, his estate, including said lot 6, was transmitted to his heirs, one of whom, Andre Valerien Martin, acquired said lot 6 in an authentic act of partition made by and among the heirs of the first Andre Martin, dated the 29th of September, 1842, and recorded in the conveyance records of St. Martin parish on the 28th of June, 1901; that the only surviving heirs of Andre Valerien Martin, deceased, were his son and daughter, Vallery D. Martin, now deceased, and Mrs. Clarisse Martin Campbell; that they inherited the said lot 6 from their father, and that, at the death of Vallery D. Martin, his heirs, who are Mrs. Campbell's codefendants in warranty, inherited and acquired the undivided half of said lot 6.

In their answers, the warrantors, as defendants, made the following direct attack upon the tax deeds in the plaintiff's chain of title to the north half of lots 5 and 6, viz.:

"First. That its author, the state of Louisiana, had no title to said property, the said title to said land in the year 1907 still being in the heirs of Andre or Andre Valerien Martin, the title never having been legally divested, the assessment being in the name of Charles S. Babin, under which the property was adjudicated on May 23, 1908, for taxes for the year 1907, being erroneous.

"Second. The said tax sale of May 23, 1908, was further erroneous for the reason that the description of the property was wrong, there being no government subdivision of section 41, township 10 S., range 5 E., St. Martin parish, into lots—no reference being made on said tax roll or in the advertisement thereof to any private or conventional subdivision of said section.

"Third. That while the assessment roll for the year 1907 for the parish of St. Martin, La., shows the property described as 260 acres, N. ½ of lots 5 and 6, section 41, township 10 S., range 5 E., together with the other property, to have been originally assessed in the name of C. S. Babin, the assessment on the said roll in the tax collector's office of said parish was changed prior to the advertisement of the sale of said property for taxes for the year 1907 of said parish, and the actual sale thereof, to 'Unknown' owner; that no notice in the name of 'Unknown' owner was previously advertised, as required by section 52 of Act 170 of the General Assembly of Louisiana for the year 1898; that on December 19, 1907, the said C. S. Babin paid taxes on his other property in the said parish and

purposely omitted paying taxes on the property described as the 260 acres, N. ½ of lots 5 and 6, section 41, township 10 S., range 5 E., the assessment on the tax roll for 1907 of said property then standing in the name of 'Unknown' owners, or was caused to be so changed by him, he thus recognizing the invalidity and illegality of his claim to previous title, as well as that of Alex Thibodeaux, hereinafter referred tô, to the said property, thereby estopping him and his successors from claiming title to said property, which estoppel respondent especially pleads.

"Fourth. That respondent has been unable to obtain a copy of the St. Martin Banner, alleged to contain the advertisement of tax sales made May 23, 1908, by the sheriff and tax collector of St. Martin parish, of delinquent tax debtors for the year 1907, and therefore denies that the requirements of the law as to advertisement of delinquent tax list for the year 1907, was legally published and the requirement of the law complied with in any respect, either in the name of C. S. Babin, or 'Unknown,' or description of property, as will be more fully shown on the trial hereof."

"That neither Charles Babin or Charles Babin, Jr., nor Alex Thibodeaux or his heirs, was ever the owner of any portion of section 41, township 10 S., range 5 E., and therefore could not convey title by partition or otherwise, for these reasons:

"A. That their author, the state of Louisiana, had no title to said property, and the tax sale of date, June 3, 1889, from the state of Louisiana to Alex Thibodeaux and Chas. S. Babin, Jr., conveyed no valid and legal title for the reasons:

"B. That title to said section 41, township 10 S., range 5 E., Louisiana meridian, St. Martin parish, was, in the year 1885, vested in the heirs of Andre or Andre Valerien Martin, deceased, who previously acquired the same as above set forth from his father, Andre Martin, deceased, by partition among the heirs of the latter and the latter having acquired same by partition among the heirs of Claude Martin, deceased; that many years previous to said assessment of 1885 Francois Moreau had sold said section 41 to the heirs of Claude Martin, and through him it descended to respondent and her co-owners, who were owners of record in the year 1885, and the said assessment in the name of Reps. Francois Moreau was erroneous and illegal, and the tax sale of said property in his name conveyed no title to the state.

"C. Respondent further avers that the requirements of law as to notices of delinquency and advertisement were not complied with in the sale of said property, no notice to 'Unknown owners' having been previously published as required by law governing at that time notices to delinquent tax debtor and advertisement of sale.

"D. That the tax sale from the state of Louisiana to Alex Thibodeaux and Chas. S. Babin, Jr., was invalid and illegal, and conveyed no title for the reason that section 2 of Act 80 of the General Assembly of the state of Louisiana for the year 1888 has not been complied with; that the amount of taxes and penalty due the state for taxes on said property for the year 1885 aggregated the sum of $12.30½; that the property was adjudicated and sold to the tax purchasers for $12.25½, being insufficient under said law, which was imperative and required a bid of not less than the amount of taxes for which the property was adjudicated to the state and 20 per cent. penalty."

In bar of these attacks on its tax title to the north half of lots 5 and 6 of section 41, township 10 S., ranch 5 E., the plaintiff filed the plea of prescription of 3 years, provided in article 233 of the Constitution.

It is to be observed, from the foregoing pleadings, that, although the original defendant and his warrantors denied that the plaintiff had title to any of the lands described in its petition, they only assert title to lot 6, of which the plaintiff claims only the north half, in section 41, township 10 S., range 5 E. The contest in this suit is therefore confined to the north half.of lot 6, in section 41, township 10 S., range 5 E. As to the title of the land, the contest is between the plaintiff and the defendant's warrantors; and, as to the cross-ties sequestered and the proceeds of the ties that were shipped, the contest is between the plaintiff and the intervener or third opponent.

The case was tried on the foregoing pleadings, and judgment was rendered against the plaintiff, rejecting its demands, dissolving the writs of sequestration and injunction, and condemning the plaintiff to pay $1,000 damages to the intervener or third opponent, Mermentau Shingle Mill, that is $500 for loss of time, worry, and expense caused by the sequestration of the cross-ties, and $500 for attorney's fees incurred in dissolving the writs. The judgment recognized the warrantors to be the owners of the land described as lot 6 of the act of partition of the estate of Claude Martin, deceased, and reserved the defendant's right to sue the plaintiff for damages. The plaintiff has appealed. The defendant and warrantors have

filed in this court pleas of prescription of 10 and 30 years.

The deeds and assessment rolls introduced in evidence correspond with the allegations of the pleadings set forth above.

It is not contended on behalf of the defendant or warrantors that the land in contest was assessed in the name of any one else than the unknown representatives of Francois Moreau in 1885, or in the name of any one else than Charles S. Babin in 1907, or that the taxes for 1885 or 1907 were paid by any one.

### Opinion.

[1] The defendant and his warrantors have no interest in complaining that, in the sale made by the state of Louisiana to Alex Thibodeaux and Charles S. Babin, Jr., on the 3d of June, 1889, the property was adjudicated to them for five cents less than the amount of taxes and penalties due to the state, if the property was legally sold to the state on the 1st of May, 1886, for the taxes of 1885 assessed to the unknown representatives of Francois Moreau. See Quaker Realty Co. v. Labasse, 131 La. 996, 60 South. 661, Ann. Cas. 1914A, 1073, and Quaker Realty Co. v. Purcell, 134 La. 1022, 64 South. 894. Nor can the defendant or warrantors successfully contest the title acquired by the plaintiff from the state on the 23d of September, 1911, if the prescription of 3 years cured whatever defects there may have been in the tax sale made to the state, for the taxes assessed in the name of the unknown representatives of Francois Moreau on the 1st of May, 1886, or·in the sale made to the state, for the taxes assessed in the name of C. S. Babin, on the 23d of May, 1908. The first of these tax sales to the state was recorded in the conveyance records of St. Martin parish on the 8th of May, 1886, and the second on the 11th of June, 1908.

The sale made by Francois Moreau to the ·heirs of Claude Martin on the 28th of Sep-tember, 1811, was not recorded, but was filed, numbered, and indexed in the recorder's office of St. Martin parish. The act of partition among the heirs of Claude Martin, deceased, by which the first Andre Martin acquired the land in contest, was properly recorded in St. Martin parish on the 29th of September, 1834. The act of partition among the heirs of the first Andre Martin, deceased, dated the 29th of September, 1842, whereby Andre Valerien Martin acquired the land in contest, was not recorded in St. Martin parish until the 28th of June, 1901.

The warrantors have never paid taxes on the land in contest except for one year, 1905. Mrs. Campbell testified, however, that her father, who died in 1867, "used to pay taxes" on it.

The land in controversy is situated about three miles from the Magnolia Plantation, the ante bellum home of Mrs. Campbell, in Lafayette parish. Lake Carlo and the lands of other persons than the warrantors lie between the plantation and the cypress swamp land in contest. Wood was cut from this swamp land for fuel for the sugar house on the plantation every year, until sugarmaking was abandoned there, in or about the year 1870. Thereafter Mrs. Campbell had wood cut from the swamp land in contest and brought to the plantation every year for making and repairing pieux fences, and for fuel for the Campbell home, and for the use of the employés on the plantation, until in or about 1890, when Mrs. Campbell moved into the town of Lafayette. Her brother, Adrien, built a small house or camp on the land in contest about 65 years ago, and stayed there at times when the plantation hands were cutting wood. He quit going there, however, long before 1880. Mrs. Campbell had the land surveyed during or about the year 1904, and had a map of it made, which was borrowed from her and lost. Only two witnesses testified that they had cut wood off of this

land for Mrs. Campbell, and they quit cutting wood there in or about the year 1883. Another witness testified that he had cut wood off of the land for about 5 or 6 weeks during each of 2 years, and paid Mrs. Campbell for the trees, according to an agreement he had with her. He could not remember when that was, but said "it was about ten years ago." He testified on the 28th of October, 1914.

The defendant, Dalferes, testified that he began cutting timber and making shingles in 1910, on what is called the Meloncon tract of land; but he would not say that he had cut any timber off of the lot 6 in controversy until 1911, when he began making cross-ties of the timber he had bought from Mrs. Campbell in 1908. He could not, or did not, say when he commenced work on lot 6, except that the last cutting of timber was done on that land on the 26th of October, 1911, when a representative of the plaintiff company saw him at work; and the writs of injunction were issued in this case two weeks later.

It is not contended that the defendant or any of the warrantors or any one representing any of them has ever occupied the land in contest since a date prior to the first sale to the state for taxes in 1886. In fact it is unfit for occupancy. There is no evidence that the defendant or any of his warrantors or any representative of any of them had any character of possession of this land, or exercised any act of ownership, during the period of nearly 21 years, from 1890 to October, 1911, except that one man, under an agreement with Mrs. Campbell, cut timber from the land during 5 or 6 weeks in each of 2 years, perhaps in 1903 and 1904, and that the defendant's warrantors paid taxes on it in 1905.

Therefore, when this suit was filed, the prescription of 3 years was an absolute defense against any attack upon the tax sale to the state, recorded on the 8th of May, 1886, or upon that recorded on the 11th of June, 1908. See Norgress v. Schwing, 128 La. 1040, 55 South. 667, and Quaker Realty Co. v. Purcell, 134 La. 1022, 64 South. 894.

[2] In the case of Carey et al. v. Cagney et al., 109 La. 77, 33 South. 89, it was held that, where the original owners of the property that had been illegally sold for taxes, remained in the actual, corporeal possession of the property, such possession was in continuous conflict with, and was a continuous protest against, the claim arising from the invalid tax titles; and it was held that, under those circumstances, the prescription operating as a statute of repose did not run in favor of the holder of the tax title. But it has never been held that the prescription of 3 years does not run in favor of the holder of a tax title when neither he nor the original owner of the property was in the actual corporeal possession of it. On the contrary, it is now well settled that no other possession on the part of the original owner can prevent the running of the prescription of 3 years in favor of the holder of a tax title than the actual corporeal possession. The fiction called civil possession, resulting from the registry of the title of the original owner, will not prevent the running of prescription in favor of the holder of a recorded tax title. See Ashley Co. v. Bradford, 109 La. 652, 33 South. 634; Slattery v. Kellum, 114 La. 288, 38 South. 170; Norgress v. Schwing, 128 La. 1043, 55 South. 667; Quaker Realty Co. v. Purcell, 134 La. 1022, 64 South. 894.

[3] It is also well settled that the prescription of 3 years runs in favor of the state, holding under a tax title, and inures to the benefit of a purchaser from the state. See In re Quaker Realty Co., 127 La. 208, 53 South. 526, Norgress v. Schwing, 128 La. 1040, 55 South. 667, and Quaker Realty Co. v. Purcell, 134 La. 1022, 64 South. 894.

The complaint that the land was not de-

scribed by government survey or subdivisions, in the tax sale to the state in 1908, deserves no consideration. The law only requires a description by which the property can be identified in a tax deed. See Weber's Heirs v. Martinez, 125 La. 667, 51 South. 679; Guillory v. Elms, 126 La. 560, 52 South. 767; Succession of Perrault, 128 La. 453, 54 South. 939; Gomez v. Wilde, 135 La. 204, 65 South. 109; and Landry v. McWilliams, 135 La. 655, 65 South. 875.

It is unnecessary to decide, in this case, whether the filing and indexing, without recording in the conveyance book, of the deed from Francois Moreau to the heirs of Claude Martin, dated the 28th of September, 1911, rendered the subsequent assessment of the property in the name of the unknown representatives of Francois Moreau invalid. The prescription of 3 years applies to a tax sale made under an assessment to one who was not the owner. See Terry v. Heisen, 115 La. 1070, 40 South. 461; Richards v. Fuller, 122 La. 847, 48 South. 285; Norgress v. Schwing, 128 La. 1043, 55 South. 667; Winn Parish Bank v. White Sulphur Co., 133 La. 282, 62 South. 907.

The vague allegation "that the requirements of law as to notices of delinquency and advertisement were not complied with," is not borne out by the record. The deed of sale in the name of the unknown representatives of Francois Moreau recites that the requirements of the law were complied with, and the title thus acquired was at least a sufficient basis for the prescription of 3 years. See Weber's Heirs v. Martinez, 125 La. 666, 51 South. 679.

Our conclusion, that the plaintiff's plea of prescription of 3 years must prevail, renders it unnecessary to decide whether the defendant should have been allowed to amend his pleadings as late as he did, or to decide other interesting questions argued in the briefs.

Although the defendant admitted that some of the cross-ties sequestered were made from timber that was cut from the land in contest after the plaintiff bought this land, the evidence as to the quantity of timber severed from the land after the plaintiff acquired it is not at all satisfactory. The plaintiff contends that the burden of proof was on the Mermentau Shingle Mill, as third opponent, to prove its title to the cross-ties alleged to have been bought from the defendant, Dalferes; and refers to article 398, C. P. The opponent did prove that it had purchased the ties from Mr. Dalferes. The plaintiff contends that, if they were made from timber cut off of the land which we have concluded belongs to the plaintiff, Mr. Dalferes had not a valid title to them. On the other hand, if the timber was severed and removed before the plaintiff bought the land, the timber was movable property and was not conveyed by the deed to the land. The opponent's contract with the defendant was not recorded; hence the plaintiff was justified in having the cross-ties sequestered, and the opponent is not entitled to damages. The ties have been released on bond by the opponent, and the rights of the parties can be adjusted on proof of the quantity of timber cut from the land after the plaintiff purchased it. We are therefore constrained to remand this case for a trial only of the question of damages due by the defendant to the plaintiff and of the quantity of timber or number of cross-ties for which the plaintiff is entitled to compensation.

For the reasons assigned, the judgment appealed from is annulled; and it is now ordered, adjudged, and decreed that the plaintiff be and it is recognized as the owner of the lands described in its petition; that the writ of injunction issued herein be perpetuated; that this case be remanded to the district court only for the purpose of hearing evidence as to the quantity of timber cut

from the plaintiff's land after the plaintiff acquired title to it; and to determine the amount of compensation due to the plaintiff therefor. The defendant and warrantors are condemned in solido to pay all the costs of this suit.

*(Syllabus by the Court.)*

1. TAXATION ☞796—SALE FOR DELINQUENT TAXES—RESALE BY STATE—ATTACK ON VALIDITY.

The former owner of property that has been sold to the state for delinquent taxes, and sold by the state to a third party after the time for redemption has expired, has no interest in contesting the validity of the sale by the state to the third party if the tax sale to the state was valid, or if prescription has remedied the illegalities in the tax sale to the state.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. §§ 1578–1581; Dec. Dig. ☞796.]

2. TAXATION ☞805 — PROPERTY SOLD FOR TAXES — POSSESSION OF ORIGINAL OWNER — "CIVIL POSSESSION"—LIMITATIONS.

It requires the actual physical possession, by the original owner of property that has been sold for taxes, to prevent the running of the prescription of three years in favor of the holder of the tax title. The fiction, called civil possession, resulting from the registry of the title of the original owner, will not suffice.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. §§ 1593–1597; Dec. Dig. ☞805.]

3. TAXATION ☞805—TAX SALE—PURCHASER FROM STATE—ACTIONS—LIMITATIONS.

The prescription of three years runs in favor of the state as the adjudicatee at a tax sale, and inures to the benefit of a subsequent purchaser from the state.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. §§ 1593–1597; Dec. Dig. ☞805.]

