(130 So. 350)

**CLOSE et al. v. ROWAN et al.**

No. 30454.

July 2, 1930.

Rehearing Denied Oct. 7, 1930.

John W. Lewis, of Opelousas, and Melvin P. Barre, of New Orleans, for appellants.

Augustus H. Garland, of Ville Platte, amicus curiæ.

Dubuisson & Burleigh, of Opelousas, for appellee Opelousas-St. Landry Bank & Trust Co.

Dubuisson & Burleigh and L. L. Perrault, all of Opelousas, and J. S. Atkinson, F. E. Greer, and Thigpen, Herold & Cousin, all of Shreveport (John E. Green, Jr., of Houston, Tex., of counsel), for other appellees.

Stubbs & Thompson, of Monroe, for warrantor Hoskins.

OVERTON, J.

This is a suit to recover 152.2 acres of land in the parish of St. Landry. The plaintiffs are seventy-odd in number, and claim to be the heirs of John Close and Euphrosine Barre, his wife, who died intestate many years

ago. The land forms part of a grant, made in 1765 by the King of Spain to one Courtableau, which in 1786 passed to Charles Barre, the father of Euphrosine Barre, in whose name the grant was confirmed by Congress in 1811. Plaintiffs allege that in 1813 Charles Barre donated the land here involved to his daughter, Euphrosine Barre, wife of John Close, and that at the death of Barre his daughter collated the property donated to her, which was then sold, in 1826, in the succession proceedings of her father to John Close, the husband of Euphrosine Barre, through whom plaintiffs claim title.

On the other hand, J. A. Perkins, one of the defendants herein, claims title to the land, sued for, and others assert mineral rights therein, by mesne conveyances from Leonce E. Littell and J. G. Lawler, to whom the property was adjudicated at tax sale made on September 1, 1904, for the state and parish taxes of 1903, the tax sale having been duly recorded in 1904.

In their petition, as amended, plaintiffs attack the tax sale, as being null and void on the following grounds, to wit:

(1) The property was not the property of the estate of Charles Barre or the property of the heirs of Charles Barre, and, hence, the assessment of the same was erroneous and illegal, as being in the names of persons, not the owners.

(2) No notice of delinquency was ever mailed or published of the intention to sell the property for the taxes of the year 1903, and none of the formalities attending the assessment, seizure, and sale, required by law, were fulfilled or complied with by the tax collector.

(3) The assessment of the property, sold by the sheriff, was a dual assessment; the taxes on all or most of the land, so sold, for the year 1903, having already been paid and satisfied.

(4) The description in the assessment, on the tax rolls of the tax collector, and carried in the advertisement of the property, was and is too vague, indefinite, and lacking in detail to identify the property.

(5) There was a prepayment of the taxes for the year 1903 on all, or, at least, a large part of the property, which was assessed, advertised, and sold by the tax collector.

(6) There was no legal sale or correct assessment made of the property claimed by defendants in this suit; that the assessment of the property, adjudicated at the tax sale to Leonce E. Littell and J. G. Lawler, which embraces and comprises the property in contest here, was erroneously assessed and inadequately described in the assessment rolls for the year 1903, and that such assessment roll as was filed in the clerk's office of the parish of St. Landry contained no description whatever of the property that was subsequently sold at tax collector's sale to Littell & Lawler.

(7) The advertisement of the property, upon which the tax sale is based, appears in the official journal for the year 1904, as resting on a supplemental roll, made by L. E. Littell, and the description carried into the advertisement, upon which the sale rests appears as utterly at variance with the assessment of the property in question and with the description carried into the adjudication to Littell and Lawler.

(8) The tax sale is null and void, because Littell, one of the purchasers at the tax sale, was at that time and prior thereto a deputy assessor, and made or assisted in making the assessment of the property sold at tax sale.

(9) The property was sold at tax sale for less than the taxes due thereon.

One, among the defenses pleaded by defendants, is the peremption of three years, prescribed by the second paragraph of section 11 of article 10 of the Constitution of 1921, which reads as follows:

"No sale of property for taxes shall be set aside for any cause, except on proof of payment of the taxes for which the property was sold prior to the date of the sale, unless the proceeding to annul is instituted within six months from service of notice of sale, which notice shall not be served until the time of redemption shall have expired and within three years from the date of the recordation of the tax deed, if no notice is given. The fact that taxes were paid on a part of the property sold, prior to the sale thereof, or that part thereof was not subject to taxation, shall not be cause for annulling the sale as to any part thereof on which the taxes for which it was sold were due and unpaid, provided that the provisions hereof shall not affect any pending suit, nor any suit which may be brought within a period of twelve months from the date of the adoption of this Constitution, in which any tax sale is sought to be annulled for any of said causes."

The Constitutions of 1898 and 1913 contained provisions, to be found in the second paragraph of article 233 of each, very similar to the provisions contained in the Constitution of 1921, save there is nothing expressed in them concerning the effect of a partial payment of taxes, and another ground is stated therein besides payment, which excepted the sale from the peremption, namely, a dual assessment.

In interpreting the Constitutions of 1898 and 1913, this court in Pierson v. Castell Land & Harbor Co., Inc., 159 La. 158, 105 So. 274, 277, said:

"It is scarcely necessary to repeat what this court has so often taken occasion to announce, that since the Constitution of 1879 and the succeeding ones [referring to those of 1898 and 1913], where there has been an assessment of land and a tax sale is made which describes the land in such a manner that it can be reasonably identified, the peremption of three years provided for by the Constitution applies, and the tax title is not subject to attack thereafter, except on the two grounds stated [referring to prior payment and dual assessment], or where the tax debtor, tax delinquent, or owner has remained in possession of the property after the said tax sale."

In the case of Ashley Co. v. Bradford, 109 La. 644, 33 So. 634, 640, quoted approvingly in Pierson v. Castell Land & Harbor Co., supra, this court, in interpreting article 233 of the Constitution of 1898, said:

"By its enactment they [referring to the members of the convention] intended to give warning to owners of property that they must look after and keep up with the same in respect to assessment for taxes and payment of taxes, and that if they failed to do so and the property appeared upon the assessment rolls, was proceeded against for nonpayment of taxes and sold and the title of the purchaser recorded, the owner must, at his peril, bring his suit within the time prescribed to set it aside, and if he did not he must forever thereafter hold his peace except, as to the two causes which the article excludes from the operation of the prescriptive limit [referring to dual assessment and prior payment of taxes]."

As we have seen, the Constitution of 1921 has dropped dual assessment as an exception to the course of the peremption, and we may add, though we shall have to refer to it again as well as to dual assessment, that jurisprudence has recognized another exception to the running of the peremption, namely, where it appears that the sale was made without any assessment.

The sale in the present case was duly recorded in the conveyance records in 1904. Plaintiffs or, so far as appears, those through whom they hold, have not had actual possession of the property since the tax sale. Therefore, such grounds of attack as the property was not assessed in the names of the owners, but in the names of others, not the owners; as no notice of delinquency or intention to sell was ever given the owners; as the tax roll in the clerk's office contained no description of the property that was sold at tax sale: as the advertisement of sale was at variance with the assessment and with the description contained in the tax sale; as the sale is null and void, because Littell, one of the tax sale purchasers, was a deputy assessor at the time of the assessment and sale, and took part in making the assessment, a deputy assessor being prohibited by Act No. 94 of 1902 from buying property at tax sale; and as the property was sold at tax sale for less than the taxes due thereon—all of which grounds are pleaded by plaintiff against the tax sale, as shown above, fall before the peremption of three years, under section 11 of article 10 of the Constitution of 1921, and would have fallen by the same peremption, under article 233 of the Constitution of 1898, as well as under the same article of the Constitution of 1913. Not one of these grounds comes within the two exceptions, established by the Constitutions of 1898 or 1913, namely, dual assessment or prior payment of taxes, nor within the single exception established by the Constitution of 1921, namely, prior payment of taxes.

The foregoing ruling leaves for decision the questions of no assessment, sufficiency of description to identify the property sold, and prior payment of taxes under dual assessments. We shall consider the first two grounds together.

The property, sold at the tax sale, is described in the deed of sale as follows: Four hundred acres of woodland bound north by J. Saizan, south by section 19, east by Perrault, and west by Saizan, valued at $1,600. The tax collector's deed recites that the property sold was the property of the heirs of Charles Barre, No. 8 supplemental roll as per assessment roll of the state of Louisiana for the year 1903. The description by boundaries, as appears in the tax sale, also appears in the advertisement of sale, except that, by reason of an error, the heirs of Charles Barre are styled the heirs of Charles Bane, the printer evidently mistaking the two "r's" in Barre for an "n." When reference is made to the tax rolls in the tax collector's office for the year 1903, it is found that the descriptive part of the page on which the assessment in the name of the heirs of Charles Barre appears is entirely eaten out by worms, as is also parts of the assessments against other owners. Plaintiffs have attempted to show circumstantially that the description of the property was never written on the roll, but the evidence offered fails to carry the conviction that they are correct in their position. Apparently, the assessment sheet itself, upon which the assessment was made, was lost or destroyed during the years that intervened since its confection and the filing of this suit, and, as to the roll in the state auditor's office, that roll could not be found. When reference is made to the copy of the tax roll for the year 1903, required by law to be filed in the clerk's office, the following appears: "8 Barre, Chas., heirs 400 wds. [meaning 400 acres woodlands] for description see original in T/C office, [meaning tax collector's office]," and then follows the value of the land, and a statement of the taxes levied against it.

Plaintiffs take the position that the assessment roll in the tax collector's office, which

is worm eaten, contained, at least, no more description than that contained on the roll in the clerk's office, on the theory that the latter is supposed to be a copy or duplicate of the one in the tax collector's office. However, plaintiffs' theory is not applicable here. The very reference on the roll, "For description see original in T/C office," shows that something more appears on the roll in the tax collector's office than on the one in the clerk's office, namely, the description.

Section 11 of article 10 of the Constitution 1921 provides that: "All deeds of sale made, or that may be made, by the collectors of taxes, shall be received by courts in evidence as prima facie valid sales." This presumption of validity necessarily carries with it the presumption of the regularity of all antecedent proceedings. The burden is necessarily upon the one attacking the tax sale to overcome this presumption. Jurisprudence has recognized that, where there is no assessment, the peremption of three years does not cure the defect. Guillory v. Elms, 126 La. 560, 52 So. 767; Mecom v. Graves, 148 La. 369, 86 So. 917; Hollingsworth v. Schanland, 155 La. 825, 99 So. 613. The evidence in this case, however, fails to overcome the presumption that there was an assessment. To the contrary, we think that the evidence fairly supports the presumption that there was an assessment, and, as the tax collector obtained the description that he inserted in the advertisement of sale, and carried into the sale, from somewhere, we think it fair to infer that he got it from the tax rolls in his office, which was the most likely place.

The description in the tax sale, which we have found, presumptively at least, was also in the assessment, is reasonably sufficient to identify the property sold at tax sale. It is true that one of the boundaries is lacking, but, with the acreage given, that defect should not interfere with identifying the land sold. In fact, surveyors have found no difficulty apparently in identifying the property, and there is other evidence in the record to the effect that the description is sufficient to identify it. Such sufficiency is all that the law requires, and resort may be had to evidence dehors the deed to aid in identifying the property. Baldwin Lumber Co. v. Dalfares, 138 La. 507, 524, 70 So. 493; In re Perrault's Estate, 128 La. 454, 54 So. 939; Pierson v. Castell Land & Harbor Co., 159 La. 158, 165, 105 So. 274.

The remaining question to be decided is that of prior payment of taxes under dual assessments. The record appears to show—and it does not seem to be disputed—that there were dual assessments as to parts of the 400 acres sold, one on 70 acres and another on 39.63 acres of it, and that the taxes on these parts were paid by the owners thereof preceding the tax sale. These overlapping assessments did not touch the 152.2 acres, involved in this suit, and therefore, when payment was made by the adjoining owners, under the double assessments, the payments were not made upon any part of the 152.2 acres, in contest here, though they were made upon parts of the 400 acres sold at tax sale.

There can be no question that, had this suit been brought before the adoption of the Constitution of 1921, or within a year thereafter, the peremption of three years would not have prevented the annulment of the entire tax sale. Eivers' Heirs v. Rankin's Heirs, 150 La. 7, 90 So. 419; Const. 1921, art. 10, § 11. However, the suit was not then brought. It was not instituted until September 4, 1928, and paragraph 2 of section 11 of article 10 of the Constitution of 1921 provides that the payment of taxes on a part of the property sold, prior to the sale thereof, shall not be cause for annulling the sale, as to any part thereof, on which the taxes for which it was sold were due and unpaid, provided that the provisions

of the section shall not affect any pending suit, nor any suit which may be brought within a period of twelve months from the date of the adoption of the Constitution, in which a tax sale is sought to be annulled.

■ Plaintiffs urge that the provision, relative to prior payment on part of the property sold, has no retrospective effect. However, it is clear that it does have such an effect, otherwise there would be no reason for the insertion of the twelve months' limitation, contained in the proviso of the section, which clearly relates to tax sales, made prior to the adoption of the Constitution of 1921.

It is our opinion that the peremption of three years should be sustained, and, since the sustaining of it defeats plaintiffs' claim of title, their demands should be dismissed.

We may add that we find no merit in plaintiffs' contention that the property was redeemed, some years ago, from the tax sale made.

The trial court rendered judgment sustaining the prescription of ten years filed by defendants, and dismissing plaintiffs' demand. We prefer resting our decree on the peremption of three years. In affirming the judgment of the lower court, dismissing plaintiffs' demand, we must be understood as doing so on the peremption of three years.

For these reasons, the judgment of the district court dismissing plaintiffs' demand is affirmed.