18 So.2d 607

**YUGES REALTY, Limited, v. JEFFERSON PARISH DEVELOPERS, Inc.**

No. 37536.

May 22, 1944.

Rudolph J. Weinmann, of New Orleans, for defendant and appellant.

O'Niell & O'Niell, of New Orleans, for plaintiff and appellee.

ODOM, Justice.

On January 15, 1944, the plaintiff, Yuges Realty, Limited, a corporation, entered into an agreement with the Jefferson Parish Developers, Inc., the defendant, which agreement was reduced to writing. By the terms of this agreement the plaintiff agreed to sell to the defendant, and the defendant agreed to purchase from the plaintiff, a square of ground, Square 1973 in the City of New Orleans, bounded on the north by Benefit, on the south by Treasure, on the east by Mandeville, and on the west by Marigny Street, for a stipulated consideration of $10,500 cash. The defendant refused to comply with its agreement to purchase on the alleged ground that plaintiff's title was defective. Plaintiff brought this suit to compel the defendant to accept title and pay the price.

There was judgment in favor of plaintiff and against the defendant, ordering the defendant to perform specifically the contract entered into between it and plaintiff. From this judgment the defendant appealed.

Defendant admits in its answer that it agreed to purchase the property from the plaintiff and to pay therefor the sum of $10,500 cash, and alleges that its reason for not complying with the agreement is that plaintiff's title is defective. The square of ground is No. 1973, which, according to a map found in the record, measures 320 feet on Marigny, 310 on Benefit, 320 on Mandeville, and 310 on Treasure Street. The northern portion of the square was purchased by plaintiff, Yuges Realty, Limited, from Phillip G. Veith on March 14, 1935, and the southern portion of the square was purchased by the plaintiff from Joseph F. Ebert in March, 1944. The northern portion of the square is known as the Patrick property, and the southern portion as the Leininger property. The titles to both the Patrick and the Leininger property trace back to the State. The record discloses that each of the tracts was forfeited to the State in 1885 for the non-payment of the taxes for the years 1882 and 1883. For

each of those years, the northern portion of the square was assessed to J. B. Patrick and the southern portion to George Leininger. This is shown by the tax assessor's rolls for those years. The description of the property, as shown by these rolls, is as follows:

"Square No. 1973". In the left-hand column under the heading "Names of Taxable Persons", appear, first, the name of J. B. Patrick and, underneath his, the name of George Leininger. In the next column to the right, under the heading "Names of Streets", opposite the name of J. B. Patrick appears the following: "Treas. Mar. Mand. Benefit", the abbreviations standing for Treasure, Marigny, and Mandeville streets. In the same column, opposite the name of George Leininger appears the following: "Treasure & Mandeville". To the right is another column, headed "Measurement of Lots". In this column there are written the figures "199–309" opposite the name of J. B. Patrick, and opposite the name of George Leininger are written the figures "210–128".

The names of no other persons are listed as being owners of property in Square 1973. Apparently it was intended that all the property in the square be assessed to Patrick and Leininger.

The instruments evidencing the forfeitures to the State are in the record, and were duly registered in the conveyance office of the Parish of Orleans. Two of them are dated March 7, 1885. They are identical except as to the years for which the property was forfeited, one of them evidencing the forfeiture for the non-payment of the taxes for the year 1882 and the other for the year 1883. These instruments contain the usual recitals with reference to the assessment of the property, the non-payment of the taxes, the notices served, and the failure of the tax debtor to pay the taxes after receiving notice. One of them recites that the following described property was assessed to J. B. Patrick for the year 1882, and the other that the same property was assessed to Patrick for the year 1883, the property being described in each as follows:

"Certain lots of ground and improvements thereon in the Third District of the City of New Orleans, in square No. 1973, bounded by Marigny, Mandeville, Humanity and Benefit streets; said lots measure 199 feet front on Marigny street by 309 feet in depth."

The instruments recite that the property was forfeited to the State for the non-payment of the taxes due by J. B. Patrick for the years 1882 and 1883.

There is a slight error in the description, in that it is said that Square 1973 is bounded by Marigny, Mandeville, *Humanity,* and Benefit streets. The statement in the description that the property is bounded on one side by Humanity Street is evidently a clerical error, because the map shows that this square does not touch Humanity Street, which is a block north of it. Treasure Street, which is the southern boundary of the square, should have been named instead of Humanity Street.

This property was sold under the same description by Paul Capdevielle, State Auditor, to Phillip G. Veith on October 11, 1909.

There are in the record two other instruments, evidencing the forfeiture to the State of that portion of Square 1973 which was assessed to George Leininger, each being dated March 6, 1885. These two instruments show that the property was assessed in the years 1882 and 1883 to George Leininger, one of the instruments evidencing the forfeiture for the non-payment of taxes for the year 1882 and the other for the year 1883. The description in these forfeiture deeds is identical and is as follows:

"Certain lots of ground and improvements thereon in the Third District of the City of New Orleans, in square No. 1973 bounded by Treasure, Mandeville, Marigny, and Benefit streets; said lots measure 210 feet front on Treasure Street, by 128 feet in depth, forming the corner of Treasure and Mandeville streets."

The forfeiture deeds recite that the property was duly and legally assessed in the name of George Leininger for the years 1882 and 1883.

The record shows that on August 1, 1902, the State Auditor sold this property to Porter Parker, and by instrument dated October 27, 1909, Parker declared that he had purchased the property for the Louisville & Nashville Railroad·Company. That company sold the property to Joseph F. Ebert, and Ebert in turn sold it to the plaintiff.

The only attack made on plaintiff's title is that each of these tax forfeitures was invalid. Counsel for defendant says in his brief at page 3: "The defendant contends that the four tax sales (Exs. D–4, D–4a, D–5, D–5a) are invalid. The dispute here over the title revolves around those tax sales." We are concerned, therefore, only with the question as to whether or not these tax forfeitures were invalid.

As to the northern portion of the square, which we have referred to as the Patrick property, counsel for defendant says that the tax forfeiture was invalid for two reasons: (1) Because J. B. Patrick did not own the property when it was assessed to him in 1882' and 1883, but that it was at that time owned by a man named Passebon, who acquired it from Miltenberger in 1847, and (2) because the description contained in the tax deed is "radically defective". As to the southern portion of the square, which we have referred to as the Leininger property, the tax forfeiture is attacked on the sole ground that the description contained therein is "radically defective".

■ The attack made on the Patrick forfeiture on the ground that Patrick was not the owner of the property at the time the assessments were made has no merit. It is conceded that Passebon, not Patrick, owned it at the time of the assessments and forfeiture. But the forfeiture took place in 1885, nearly 60 years before this suit was filed, and, even if it be conceded, as counsel for defendant argues, that the assessment and the forfeiture were invalid because the property was not assessed in the name of the true owner, the irregularity is cured by the prescription of five years, under Article X, Section 11 of the Constitution of 1921, as amended, Act No. 147 of 1932, p. 794, which section provides that:

"No sale of property for taxes shall be set aside for any cause except on proof of

payment of the taxes for which the property was sold prior to the date of the sale, unless the proceeding to annul is instituted within six months from service of notice of sale, which notice shall not be served until the time of redemption shall have expired and within five years from the date of the recordation of the tax deed, if no notice is given."

This attack on these assessments and forfeitures comes too late.

■ This court has repeatedly held that, for the purpose of prescription under the Constitution, it is immaterial whether the assessment was made in the name of the true owner, or in the name of another, or in no name at all. Griffing et al. v. Taft, 151 La. 442, 91 So. 832, and the long list of cases therein cited on this point; Tillery v. Fuller, 190 La. 586, 182 So. 683.

■ The forfeiture of the Patrick portion of the square and the forfeiture of the Leininger portion are each attacked on the ground that the description is "radically defective". We find no merit in this attack in either case. The settled rule in this state and elsewhere is that "a tax sale which describes no property, or which contains a description so vague, indefinite, and uncertain that the property intended to be sold cannot be identified, is no sale at all, and the peremptive periods specified in the Constitution do not apply." Jackson v. Irion, 196 La. 728, 200 So. 18, 19, 133 A.L.R. 566. For the rule prevailing in other jurisdictions, see case note following Jackson v. Irion, as reported in 133 A.L.R.

■ But the rule is equally as well settled that, where the description of the property in an assessment or tax sale, although imperfect, is reasonably sufficient to identify the property, or furnishes the means for identification, the limitation or prescriptive provision in the Constitution, designed to protect tax sales, cures all irregularities and nullities in the assessments and sales. Close v. Rowan, 171 La. 263, 130 So. 350; Baldwin Lumber Co. v. Dalferes, 138 La. 507, 524, 70 So. 493; Pierson v. Castell Land & Harbor Co., 159 La. 158, 105 So. 274; Board of Com'rs for Fifth Louisiana Levee District v. Concordia Land & Timber Co., 141 La. 247, 74 So. 921.

■ The descriptions in the assessment of these properties, as well as the descriptions in the tax forfeitures, are sufficient, we think, reasonably to identify the property.

■ As to the southern portion of Square 1973, referred to as the Leininger property, we find in the record a photostatic copy of a deed dated July 18, 1870, evidencing a sale by J. B. Patrick to George Leininger, of the following described property:

"Seven certain lots of ground with the rights, ways and servitudes thereto belonging, situate in the Third district of this city in square No. 1973 bounded by Treasures, Marigny, Benefits and Mandeville streets, designated as lots One to Seven, inclusive and fronting each on Treasures street and adjoining each other; Lot One forming one of the corners of Mandeville and Treasures streets, and Lot No. Seven one of the corners of Treasures and Marigny Streets. The whole as per a plan drawn by A. de Armas, surveyor, on the 25th April, 1870, and deposited in this office."

The depth of the lots sold is not given in the deed. But in the tax forfeiture deeds the depth of the lots is stated to be 128 feet. The description in this deed shows clearly that Patrick sold to Leininger the southern portion of Square 1973, extending all the way from Mandeville Street, the eastern boundary line of the square, to Marigny Street, the western boundary line. In assessing this property to Leininger in 1882 and 1883, the assessor evidently intended to assess to him all the property which he acquired by this deed. But the assessment indicates that the dimensions of the property were 210 feet by 128 feet. The plats offered in evidence show that Square 1973 has a frontage of 310 feet on Treasure Street, its southern boundary. As we have said, the deed from Patrick to Leininger conveyed the southern portion of the square, extending all the way from Mandeville Street on the east to Marigny Street on the west, a distance of 310 feet, as per plat of de Armas which was on file in the recorder's office. It is not shown or even suggested that Leininger sold any of the property acquired from Patrick between the date of its acquisition in 1870 and its assessment to him in 1882 and 1883. Since Leininger acquired 310 feet along Treasure Street, and since the assessor must have intended to assess in his name all of the property which he owned in Square 1973, it is quite evident that the figure "210" (instead of "310") was written in the assessments and the tax forfeitures through error. This, it seems, is evident from the fact that on the same assessment roll Patrick was assessed with property in Square

1973 having a frontage on Marigny Street, the western boundary of the square, of 199 feet, and extending back, or east, 309 feet to Mandeville Street, the map showing that the distance from Marigny Street to Mandeville Street is 310 feet. The evidence in the record clearly shows that Leininger acquired a portion of the square having a frontage on Marigny Street of 128 feet, and that the Patrick property had a frontage of 199 feet on that street, the total frontage of the two properties on Marigny Street being 327 feet. According to the plat, Square 1973 has a frontage on Marigny Street of 320 feet. This shows a discrepancy of seven feet, but that is of no importance.

As to the Patrick property, or northern portion of the square, the description in the tax forfeitures is perfectly clear. The property forfeited to the State in his name has a frontage of 199 feet on Marigny Street and extends back a distance of 309 feet, or to Mandeville Street. As we said, this was all the property in the square except that owned by Leininger. The measurements in the forfeiture deeds correspond precisely with the measurements stated in the assessment.

We have carefully inspected and checked all the documentary evidence filed, and our finding is that it is shown that in 1882 and 1883 all of the ground in Square 1973 was assessed to Patrick and Leininger, and that all of this property was forfeited to the State under descriptions sufficient reasonably to identify each of the tracts forfeited. There were slight discrepancies in the assessments and in the tax forfei-

tures as to distances, but this makes no material difference. The descriptions in the assessments and in the tax forfeiture deeds are sufficient to enable the owner, or a surveyor, to identify the Patrick and Leininger properties on the ground. Our conclusion is that there is no merit in the attack made by defendant on the validity of the assessments and tax forfeitures.

For the reasons assigned, the judgment appealed from is affirmed at defendant's costs.

O'NIELL, C. J., recused.