JOHNSON, Judge.
On December 10, 1904, Gabe Thompson, Gabe Thompson, Jr., Maxey Thompson, Alex Thompson and Isaac Thompson, acquired by purchase one tract of land located in St. James Parish, Louisiana, from Mistress Laurent Bonnecaz. For easy reference hereinafter we designate this tract as Tract One. On May 9, 190S, the same five persons acquired by purchase two additional tracts from Aldophe A. Bourgeois, which we will designate as Tract Two and Tract Three, respectively. The three tracts are described in the deeds, as follows, except we add the tract numbers:
Tract One
A certain tract of land situated in the Parish of St. James on the left bank of the Mississippi River at about sixty seven miles above the City of New Orleans, measuring one half of an arpent front on said river, by a depth of forty arpents, between lines closing in the rear, bounded above by lands of Gerard Melancon & those of M. Louviere and below by those of Justilien Mel-ancon, together with all the buildings and improvements thereon and thereto belonging.
Tract Two
A certain tract or portion of land situated in the Parish of St. James on the left bank of the Mississippi River, at about Sixty seven miles above the City of New Orleans, measuring one-fourth of an arpent from on said river, to the depth of Two arpents, at which point this tract widens on the lower line so as to measure Three fourth of an arpent in width and runs back between lines closing in the rear to the Forty ar-pent line; bounded above by lands of William Frederick and below by those of Gerard Melancon to the depth of Two arpents, and from thence to the Forty arpent line by those of Louis Richard.
Tract Three
A certain portion of land situated in the Parish of St. James, immediately in the rear of the above described *542 tract of land, of an irregular form, comprising all that portion of land contained between the lower line of the White Hall plantation double concession lands belonging to Charles Breaud and the upper line of the Alta Villa plantation of A. B. Vegas, beginning at the Forty arpent line and running back to the eighty arpent line, between lines closing in the rear and measuring.arpents more or less, in width at the Forty arpent line.
Some twenty-six persons have filed this petitory action claiming ownership of 24/35th undivided interest in this property. The suit is brought against Charles Bradley, who claims an interest by inheritance. Lawrence J. Babin and Mrs. Winnie T. Keller have intervened to claim certain portions by right of purchase. Plaintiffs’ claims were rejected by the Twenty-Third Judicial District Court for St. James Parish. The judgment determines the respective portions owned by Charles Bradley and the intervenors. The plaintiffs and defendant have appealed.
This cause was tried before Honorable Clyde V. St. Amant, Judge. We have reviewed the record, including the testimony, as well as the jurisprudence on the questions involved and it is our conclusion that the written reasons handed down by the trial Judge explain with clarity the claims and contentions of all parties to this litigation. Results reached by him are correct on all points. We, therefore, take the privilege of adopting Judge St. Amant’s reasons and conclusions as our own, as follows, to-wit:
“In this litigation the plaintiffs, more than twenty-five in number, allege themselves to be the heirs of Gabriel Thompson, Sr., Gabriel Thompson, Jr., Maxey, Alex and Isaac Thompson, and as such, together with the defendant and certain other persons not parties hereto, entitled to the ownership of three tracts of land situated in the Parish of St. James. The defendant answered, claiming the full ownership. A petition of intervention was filed by Lawrence Babin and Mrs. Winnie T. Keller claiming an interest in the property.
“The record shows that the five Thompsons named above, a father and four sons, purchased Tract One from Mrs. Laurent Bonnecaz on December 10, 1904, by deed recorded in COB 57, folio 326 of the Parish of St. James, and Tracts Two and Three, which are contiguous, from Adolphe A. Bourgeois on May 9, 1905, by deed recorded in COB 57, folio 512 of the Parish of St. James.
“On April 11, 1930, Gabriel Thompson, Jr., acting in his capacity as administrator of the Succession of Gabriel Thompson and his wife, Emily Brax-ton Thompson, No. 6465 on the Probate Docket of this Court, sold and conveyed several parcels of land belonging to the estate to Maurice J. Hymel. The first parcel as described in the judicial advertisement in the ‘Interim,’ a weekly newspaper, and in the act of sale to Hymel, is stated to be ‘The one undivided fifth’ of the tract of land acquired by Gabriel Thompson et als. from Mrs. Laurent Bonnecaze. The second parcel was described in two parts, A and B, referred to herein as Tracts Two and Three. Part A of parcel two was described as ‘The one undivided fifth’ but part B was described simply as ‘A certain portion of land.’ The description of the second parcel concludes with the statement ‘The above property was acquired by Gabriel Thompson et als on May 9th, 1905, from Adolphe A. Bourgeois.’ Although the description of Part B of the second parcel would seem to indicate that the full ownership was being transferred, it is apparent from the *543 description of the parcel as a whole and from the acquisition that what was intended to be conveyed was simply the undivided interest. Inas-must as Gabriel Thompson owned only an undivided one-fifth interest, that was all that the administrator of his succession could convey.
“On December 3, 1932, the property referred to herein as Tracts One, Two and Three, and listed in the administrator’s sale as the first and second parcels was sold for taxes in the name of Gabe Thompson, and was adjudicated to Laura Bradley and Joseph Thompson. At this time Joseph Thompson was legally married to and living with one Flora Tillman.
“On March 12, 1941, a judgment of possession was read, rendered and signed in the matter of the Succession of Maurice J. Hymel, No. 7236 on the Probate Docket of this Court, recognizing Rev. Father Maurice J. Hymel, Jr., C. M., as the only heir of his father and entitled as such to the ownership of the property purchased by the senior Hymel from Gabriel Thompson, Jr., as administrator of the Succession of Gabriel Thompson, Sr. The description in the judgment of possession, following the description in the sale to the senior Hymel lists an undivided one-fifth interest in Tracts One and Two, but the full ownership of Tract Three (Part B of the second parcel at the administrator’s sale), thus repeating the error.
“On September 22, 1941, Rev. Hymel sold to Mrs. Winnie T. Keller Tract Three (Part B of the second parcel of the administrator’s sale). Again, this sale purported to convey the full ownership of the property, rather than an undivided interest.
“On January 17, 1942, Rev. Hymel sold to Mrs. Winnie T. Keller the undivided one-fifth interest in Tracts One and Two.
“On June 15, 1951, Joseph Thompson was granted a divorce from his wife, Flora Tillman, to whom he was married at the time of the tax sale in 1932. In his petition for a divorce Thompson alleged that no property was acquired during the marriage.
“On March 20, 1952, Flora Tillman sold to Lawrence J. Babin and Mrs. Winnie T. Keller all of her right, title and interest in and to Tracts One, Two and Three.
“The plaintiffs contend that the administrator’s sale in 1930, and the tax sale in 1932, are both invalid, that the Thompson family has never been divested of ownership, and that the heirs of the original purchasers are entitled to be decreed the owners of the property in question. The defendant asserts the validity of the tax sale to Laura Bradley and Joseph Thompson, and claims the ownership of the property as the child and sole heir of Laura Bradley, and as the universal legatee under the last will and testament of Joseph Thompson. The intervenors claim under the record titles enumerated above, and, in addition, Mrs. Winnie T. Keller asserts a prescriptive title to Tract Three.
“The sale by Gabriel Thompson, Jr., as administrator of the Succession of Gabriel Thompson, Sr., is attacked on the ground that there is no evidence of the authority of the administrator to sell the property in question. The original record of that proceeding, No. 6465 on the Probate Docket of this Court, is missing from the Clerk’s office and could not be located. However, the deed in question is fair on its face, and duly recorded, and purports to convey title. Under the provisions of [LSA-] R.S. 13:3716 such a deed is ‘prima facie evidence of the authority of the officer or other functionary who made and delivered it’ and must be ‘deemed prima facie proof of such sale.’ *544 No evidence was introduced to refute the authority of the administrator. On the contrary, the principal plaintiff and contender, William Thompson, was a witness to the administrator’s deed and under cross examination admitted his signature. The Court is of the opinion, therefore, that the administrator’s sale to Maurice J. Hymel was valid.
“Consequently, at the time of the tax sale in 1932, the property in question was on the face of the public records owned in indivisión by Gabriel Thompson, Jr., Maxy, Alex, and Isaac Thompson, four of the original purchasers, and by Maurice J. Hymel, who had purchased the fifth share at the administrator’s sale. The property was, however, assessed and sold solely in the name of Gabe Thompson.
“Plaintiffs contend that the tax sale is null and void for the reasons that the property was not properly described and was not properly assessed. The property was not properly assessed in the sense that it was assessed in the name of only one of the five co-owners. However, this irregularity is cured by the prescription of five years under Article X, Section 11 of the [LSA-] Constitution of 1921, as amended. The Supreme Court has repeatedly held that ‘for the purpose of prescription under the Constitution, it is immaterial whether the assessment was made in the name of the true owner, or in the name of another, or in no name at all.’ Yuges Realty v. Jefferson Parish Developers, 205 La. 1033, 18 So.2d 607, 609, and cases cited therein.
“As far as the description of the property is concerned, it is located in what is known as the Double Concession strip in the Parish of St. James, and its front and rear boundaries are established respectively by the Mississippi River and by the boundary of the concession. The other two boundaries are stated in the tax sale, and the amount of acreage is given. There is no allegation that Gabe Thompson owned any other property which might have been confused with that sold at the tax sale, nor is there any difficulty in identifying the property in question. Under these circumstances the Court is of the opinion that the description in the tax sale is adequate. The rule is well established that ‘where the description of the property in an assessment or tax sale, although imperfect, is reasonably sufficient to identify the property, or furnishes the means for identification, the limitation or prescriptive provision in the Constitution, designed to protect tax sales, cures all irregularities and nullities in the assessments and sales.’ Yuges Realty v. Jefferson Parish Developers, 205 La. 1033, 18 So.2d 607, 609, and cases cited therein.
“The Court concludes, therefore, that the 1932 tax sale to Laura Bradley and Joseph Thompson cannot now be attacked. Counsel for plaintiffs, however, asserts that Isaac Thompson, one of the five original co-owners, died intestate about 1908 or 1910, having never married and leaving no issue; that consequently, his undivided one-fifth interest was inherited by his father, Gabriel Thompson, Sr., and by his seven brothers and sisters, including Mrs. Laura Thompson, wife of William Bradley, and Joseph Thompson, the two purchasers at the tax sale in 1932. Counsel for plaintiff opened the succession of Isaac Thompson and obtained a judgment of possession recognizing his father and brothers and sisters as his heirs.
“Having established that the purchasers at the tax sale were the owners of a small fractional interest in the property adjudicated to them, counsel seeks to invoke the equitable doctrine, announced by the Supreme Court in Murphy et al v. Murphy, 136 La. 17, 66 So. 382, that as between the original *545 co-owners, a sale to one of them for delinquent taxes amounts to a payment of taxes and enures to the benefit of all the co-owners. Counsel also alleges that the purchasers residing on the land and using its resources was worth more than the taxes assessed against it.
“The Murphy case was decided in 1914. In the later case of Doiron v. Lock, Moore & Co., 165 La. 57, 115 So. 366, 369, (1927), the Supreme Court sustained the co-owner’s tax title on the ground that long acquiescense ratified the tax purchase by the co-owner. In Keller v. Haas, 209 La. 343, 24 So.2d 610 (1945), the Supreme Court quoted with approval from the Doiron case as follows:
“ ‘The supplementary contention of plaintiffs that the possession of the tax purchaser was the possession of all the co-owners, suspending prescription, and that its purchase inured to the benefit of all the co-owners, was correctly disposed of by the district judge as follows, viz.:
“ ‘As to the interruption of prescription by possession for all, it will cease, of course when the possession by the tax purchaser for himself is held to have begun under the tax deed; and that begins when, if ever, the co-owner loses the right to redeem his title.
“ ‘There is no statutory law prohibiting the purchase of an undivided interest in land by a co-owner at tax sale; but if he does purchase, equity holds that the tax deed inures to the benefit of his co-owners, at their option. They may or may not exercise their option by paying their portion of the tax and demanding a reconveyance; and if they fail to do so within a reasonable time, the tax purchaser may rely upon their acquiescence and hold the title as his individual property.
“ ‘The authorities are uniform that the equitable principal which protects common tenants from loss by tax adjudications to either of them also protects the adjudicatee from belated claims for reconveyance by his co-owners. They cannot indefinitely neglect their duties to the property and to their co-owners and still claim rights which rest upon those duties. “(They) cannot sleep upon this right, await developments, to see whether the property will grow in value or not, according to the event.” [citing cases]’
“In the instant case some twenty-seven years elapsed between the date of the tax sale in 1932 and the filing of this suit in 1959. In 1932 this Parish like the rest of the nation was in the throes of the great depression, and property values were greatly depressed. Today, on the other hand, the Parish of St. James is becoming to some extent industrialized as plants locate along the river, and property values have increased phenomenally. In addition there is evidence in the record to show oil and gas activity, including producing wells, in the neighborhood of the subject property. Although the property is assessed for the same amount today as it was in 1932, the property has unquestionably increased in value many times. The changes in circumstance which have taken place since 1932 are further pointed up by the very complicated family tree presented to the Court, by the large number of plaintiffs, by the tiny fractional interests of each, and by the fact that some of the heirs are unknown and cannot be located. In view of all of these facts the plaintiffs’ undertaking takes on more of the appearance of a speculative venture than the assertion of an equitable right.
“The Court concludes that it is too late for the plaintiffs to invoke the equitable doctrine of co-ownership, because of the great length of time which has elapsed since the tax sale, and the change which has taken place in *546 the value of the property in dispute, and also for the reason that a portion of the property has passed into the hands of third parties.
“Turning now to the rights of the intervenors, Mrs. Winnie T. Keller claims the ownership of all of Tract Three, and, together with Lawrence Babin, an undivided one-fourth interest in Tracts One and Two. Her claim to Tract Three is based on the deed to her from Father Hymel dated September 22, 1941, and on the prescription of ten years. At the time she purchased Father Hymel did not own the property for the reason that it had been sold for taxes in the name of Gabe Thompson in 1932 to Laura Bradley and Joseph Thompson. Nevertheless, the deed is valid in form, recites an acknowledged consideration, and is supported by the judgment of possession in the Succession of Maurice Hymel, Sr., which in turn was based on the administrator’s sale to Mr. Hymel in 1930.
“Article 3474 of the [LSA-] Civil Code provides that ‘Immovables are prescribed for by ten years, when the possessor has been in good faith and held by a just title during that time.’ There is no question but that Father Hymel in selling and Mrs. Keller in purchasing were both acting in the utmost good faith. Furthermore, every witness who testified, including the defendant Charles Bradley, and William Thompson, the chief contender for the plaintiffs, admitted that Mrs. Keller has been in the actual physical possession of Tract Three either personally or through her tenants for a period in excess of ten years. In opposition the defendant could only show that he and his ancestors in title paid the taxes on this tract, rather than Mrs. Keller. The Court is of the opinion that Mrs. Keller has met all of the requirements of the Code for the ten year acquisitive prescription, and that the mere payment of taxes alone by the defendant is insufficient to defeat her claims.
“The claim of Mrs. Keller and Lawrence Babin to an undivided one-fourth interest in Tracts One and Two is based on the sale to them from Flora Tillman, divorced wife of Joseph Thompson, dated June 15, 1951. This sale also purported to convey Flora’s interest in Tract Three, but inasmuch as the Court has concluded that Mrs. Keller is the owner of Tract Three by virtue of the prescription of ten years, the inclusion of Tract Three is superfluous as to Mrs. Keller and unavailing as to Lawrence Babin.
“The record amply establishes the fact that Flora Tillman was legally married to and living with Joseph Thompson at the time he and his sister Laura Bradley purchased the subject property at the 1932 tax sale. The interest purchased by Joseph Thompson was therefore community property, and he could not of course deprive Flora of her interest in the property by alleging in his petition for a divorce that no property was acquired during the existence of the community. When the divorce decree was rendered, the existence of the community was terminated, and Flora Tillman and Joseph Thompson became co-owners in indivisión of a one-half interest in the property. Flora was perfectly free to sell her undivided interest to Lawrence Babin and Mrs. Keller if she chose to do so. Charley Bradley as the universal legatee of Joseph Thompson acquired only the interest which Thompson possessed.
“In summary, the Court concludes that the 1932 tax sale to Laura Bradley and Joseph Thompson cannot now be attacked, and that by that sale they became the owners of all three tracts involved in this litigation; that subsequently Tract Three was acquired by Mrs. Keller by prescription; that the *547 one-half interest of Laura Bradley and the one-fourth interest of Joseph Thompson in Tracts One and Two were acquired by Charley Bradley by inheritance; and that the one-fourth interest of Flora Tillman, divorced wife of Joseph Thompson, was acquired by Lawrence Babin and Mrs. Keller by purchase from the said Flora Tillman. Judgment will be rendered accordingly.”
It is argued that Flora Tillman, divorced wife of Joseph Thompson had no interest to sell to Mrs. Keller for the reason that there was no community interest in the undivided one-half bought by Joseph Thompson at the tax sale. Joseph and Flora were married two years before the tax sale and Joseph’s interest acquired at that sale fell into the community estate.
It is also argued that Joseph Thompson did not use community funds to purchase at the tax sale — that he used revenues from the property in which he already owned an interest by inheritance. Granting, for the argument, that he did use the revenues from such property, of which there is no proof here, we think it is well settled that revenues from separate property fall into the community of marriage, and that property purchased with such funds becomes community property. There are so many authorities on this subject that it is not necessary to cite them. Milling v. Collector of Revenue, 220 La. 773, 57 So.2d 679, is typical. See also LSA-Civil Code Article 2402.
Counsel for plaintiffs relies on the decisions in Murphy v. Murphy, 136 La. 17, 66 So. 382; Ensminger v. Vampran, La. App., 15 So.2d 161; Hodgeson v. McDaniel, 233 La. 180, 96 So.2d 481, and Atlantic Refining Co. v. Golson, La.App., 127 So.2d 341. Of those cases, the Murphy case is the most favorable to plaintiffs’ claim. In that case the property in question was owned by and assessed to Thomas H. Murphy when he died in 1876. His widow died in 1877. They were survived by three sons. One son departed to parts unknown and was never heard from. Another son died leaving two children who are plaintiffs in that suit. The third son is made defendant. The taxes on that property were not paid for the years 1880 to 1888 when the property was assessed to “Estate of T. H. Murphy.” The Supreme Court in 1914 annulled the tax sale to defendant. The decision says, that the only evidence in support of defendant’s contention that the property had been abandoned was by defendant in reference to conversations with his brothers in the presence of his father while they were still living, which testimony the Court said was the weakest species of evidence. The Court further approved the ruling of the trial Court that defendant had failed to prove that plaintiffs and their father had abandoned the property or that plaintiffs waited until the property became valuable before they asserted their ownership, indicating that weight could be given such circumstances if proven.
In the case now before us William Thompson’s testimony of his continued interest in the property and about conversations he had before the tax sale with his father and other co-owners and of his effort to get something done after the tax sale is not impressive and we give it no consideration whatsoever.
The facts in the Ensminger case, briefly stated, were that Joseph Smiley owned the property in question. He died in 1920 and his wife died in 1923. They left eight forced heirs. On the death of Smiley and his wife, their oldest son, Andrew, took charge of the property and exercised complete control over it. Andrew lived on it, sold the cattle belonging to the estate, sold straw from the land, removed houses and placed them on his own individual land, all as if he owned the whole of the property. The property was sold for taxes in *548 1926 to John Picou, who was the neighbor and relative of Andrew Smiley, and Picou then sold the property to Andrew’s wife (now Mrs. Vampran) for a recited consideration of $250.00. The evidence is clear that all these transactions were the result of a deliberate fraud and evil design on the part of Andrew who induced Picou to bid in the property on the agreement that Andrew would buy it back. Andrew arranged the sale from Picou to Mrs. Smiley. The wife testified that she did not have anything to do with it and knew nothing about what they were doing. The Court set aside the tax sale and the sale from Picou to Andrew’s wife. The decision says that the right of a co-owner to be reinvested with title is an equitable one and must be exercised within a reasonable time. The Court said that in view of the fact that no third person acquired in good faith any interest in the property after the tax sale and there being no evidence of laches on the part of plaintiffs, the tax sale did not divest the plaintiffs of their undivided shares. Those facts are not applicable to the case at bar.
The Hodgeson case holds that unless it appears that the plaintiffs have been guilty of laches by permitting a long time to elapse before the tax sale and the filing of the suit to set it aside, and without a showing that the interest of co-owners had been aroused by the greatly enhanced value of the property, the Court will not invoke the doctrine of estoppel to bar restoration of title to plaintiffs. That same expression was asserted in the decision in the Atlantic Refining Company case.
In this case now under consideration, the testimony convinces' us that all the plaintiffs except those who bought the property at tax sale virtually abandoned the property; they knew their rights had been lost by the tax sale; that they knew that Mrs. Keller and Babin had acquired an interest in the property and was in possession of same; that Eliza Thompson, 82 years old, said “they all knew about it,” (referring to Mrs. Keller’s interest); that William Thompson was told that he had lost his rights in the property right about the time of the tax sale; that William Thompson talked about doing something many times and tried to interest Joseph Thompson in calling a meeting; that he contacted an attorney in 1955 about the situation, but went off to Detroit without doing anything until he actually employed an attorney and caused this suit to be filed in 1959 (after the property has acquired great value); that Joseph Thompson left the property about twelve or thirteen years before the trial of this case, which was before his divorced wife sold her one-quarter interest to Mrs. Keller and Babin in the whole of the property. It appears that the Bradleys remained in possession of a portion of the property until they died and that defendant Charles Bradley, their only forced heir has continued in possession of his portion to the present time.
The evidence further establishes that the ITymels and intervenors have had continuous possession of Tract Three since 1930. Conceding that legally Iiymel, Sr., lost his title interest by the tax sale, there is no doubt that Hymel, Jr., and Mrs. Keller were in utmost good faith in the transfer of Tract Three to Mrs. Keller and that Mrs. Keller has so held that portion more than ten years.
We quote the following statement from the brief filed in this Court by counsel for intervenors, which statement we believe recites concisely the proper application of the legal issue here involved:
“An analysis of the doctrine upon which the plaintiffs base their case clearly reflects this distinction. Although our statutory and constitutional provisions, [LSA-] R.S. 47:2221 and Section 11 Article 10 of the Constitution, forecloses the right of redemption from a tax sale after five years of possession under the sale, our courts have in equity modified these provisions to ‘redemption within a reason *549 able time’ when the purchaser at the tax sale is a co-owner at the time of the sale of the parties seeking to redeem. The cases cited by plaintiffs’ and defendants’ counsels in their briefs all deal with the applicability of the equitable doctrine of redemption under a particular set of facts. Insofar as its application to a third party purchaser from the tax purchaser is concerned, however, Justice ICennon, as the organ of the Supreme Court, clearly states, by quoting the District Court, in Keller v. Haas, 209 La. 343, 24 So.2d 610, 612, the non-applicability of this equitable redemption doctrine as between heirs of the original owner and a transferee of the tax purchaser in the following words, to-wit:
“ ‘The court is rather of the opinion that this equitable doctrine (referring to the eqüitable doctrine of redemption) is available only to the original co-owners or their heirs, and must be exercised within a reasonable time. These transferees do not occupy, quoad the doctrine, the same position that the original co-owners did.’
"In further support, the Court is also referred to Ramsey vs. Frost Johnson, 168 La. 657, 123 So. 114 and the cases cited therein from which we quote as follows:
“ ‘Harris v. Natalbany Lumber Co., 119 La. 978, 44 So. 806; Vestal v. Producer’s Oil Co., 135 La. 984, 66 So. 334. In each of these cases it was decided that a third party, buying property from one who, being already the owner of an undivided interest in it, had bought the property for taxes assessed in the name of all co-owners, was protected by the prescription of three years.’ ”
For these reasons, the judgment of the District Court is affirmed with costs to be paid by plaintiffs.
Affirmed.