ROBERT A. CHAISSON, Judge.
|sIn this chain of title dispute, appellants Zodiac Corporation Ltd. and Salzer & Ramos Enterprises Ltd. (collectively, the “Zodiac Group”), appeal the trial court’s ruling on a motion for summary judgment declaring a 1925 tax sale of property previously adjudicated to the State absolutely null and void. Upon de novo review, for the following reasons, we affirm the decision of the trial court.
FACTS AND PROCEDURAL HISTORY
Plaintiffs, Quantum Resources Management, LLC and Milagro Producing, LLC, brought this concursus proceeding against the Zodiac Group and the Mayronne Group[1] to determine ownership of several lots located in the Jefferson Third Drainage District and entitlement to the proceeds from oil, gas, and mineral leases executed for those lots. This appeal concerns only the competing claims of ownership by the Zodiac Group and the May-ronne Group to one of these lots, a |4certain tract of land designated as “Lot 4” on a 1918 Plat of Survey prepared by Janies Webb for the Jefferson Third Drainage District. At issue is the validity of a 1925 tax sale which purportedly conferred ownership of Lot 4 to the Zodiac Group’s ancestor in title.
Both parties have submitted as evidence certified copies of parish records of the conveyances and transfers which establish their respective chains of title. Both parties also concede that they are unable to produce any additional evidence beyond what has been submitted into the record to substantiate their respective claims. The Zodiac Group traces its claim of ownership in Lot 4 to a tax sale on August 22, 1925, by the Sheriff of Jefferson Parish to John A. Saxon for 1924 taxes assessed to an Eric T. White. No evidence has been introduced into the record showing that the validity of this tax sale was challenged at any time until the present proceedings. The Mayronne Group traces its ownership to a 1936 redemption of Lot 4 by Virgil Nobles from a 1920 adjudication to the State for non-payment of 1919 property taxes assessed in the name of Virgil Nobles.
The issue of which party has better title to Lot 4 came before this Court previously on a motion for summary judgment granted by the trial court. Quantum Res. Mgmt., L.L.C. v. Pirate Lake Oil Corp., 11-813 (La.App. 5 Cir. 5/31/12), 98 So.3d 394. Af that time, this Court affirmed the *261 decision of the trial court granting the Mayronne Group’s motion for summary judgment dismissing the Zodiac Group’s claims to Lot 4 because there was no evidence that the Jefferson Parish Sheriff gave notice of the 1925 tax sale to the record owner of the lot. This Court held that the lack of notice was a violation of constitutional due process notice requirements that would render the 1925 sale an absolute nullity according to the United States Supreme Court’s ruling in Mennonite Board of Missions v. Adams, 462 U.S. 791, 103 S.Ct. 2706, 77 L.Ed.2d 180 (1983).
| sThe Zodiac Group appealed this ruling, and the Louisiana Supreme Court concluded that Mennonite could not apply retroactively in the present case to have the 1925 tax sale declared an absolute nullity. The Court found the decision in Gulotta v. Cutshaw, 283 So.2d 482 (La.1973) to be dispositive of the lack of notice issue. Quantum Res. Mgmt., L.L.C. v. Pirate Lake Oil Corp., 12-1472 (La.3/19/13), 112 So.3d 209. Under Gulotta, lack of notice to the record owner in a tax sale is a relative rather than an absolute nullity. A relative nullity does not prevent the running of the five-year peremptive period on tax sale attacks established under the 1921 and 1974 Louisiana Constitutions, and therefore could not be a valid basis for summary judgment invalidating the tax sale. Id.
On the same writ, the Mayronne Group also argued that the 1925 tax sale is an absolute nullity because at the time of the sale, the property belonged to the State pursuant to an adjudication in 1920 for unpaid 1919 taxes assessed in the name of Virgil Nobles. The Mayronne Group relied on jurisprudence established in Waterman v. Tidewater Assoc. Oil Co., 213 La. 588, 35 So.2d 225 (1947) that property previously adjudicated to the State and not redeemed in time and manner provided by statute could not be assessed and sold by taxing officers as belonging to the former owner or any other person.
The Supreme Court articulated two reasons for declining, at that time, to accept this argument. First, there existed a “significant gap” in the submitted documentation regarding Lot 4, noting in particular the 1936 certificate of redemption relied on to establish the Mayronne Group’s chain of title, which stated that Lot 4 was “returned to Tax Collector’s list of land sold [to] the State from the Parish of Jefferson filed in the Land Office, on the 30th day of September 1930.” Quantum Res. Mgmt., 112 So.3d at 219 (emphasis in original). The Court reasoned that if the property had remained with the State from 1920 through 1936 |6as claimed by the May-ronne Group, there would be no reason for the property to have been returned to the list of property sold in 1930. Id. at 220. Second, the record was silent as to any. actions of possession by the parties. Even though both parties acknowledged that Lot 4 was underwater, there existed the possibility that the property could have been acquired through acquisitive prescription, which would have overcome even an absolutely null 1925 tax sale to confer ownership in the property. Id.[2] Accordingly, the Supreme Court reversed the summary judgment granted to the May-ronne Group and remanded the case to the district court.
Subsequently, the Mayronne Group introduced new evidence into the record consisting of:
*262 1) A quitclaim deed and consent judgment from another concursus code-fendant, Pirate Lake Oil Corp., which relinquishes all rights to Lot 4 to the Mayronne Group, thereby establishing the Zodiac Group and the May-ronne Group as the only two claimants to Lot 4.
2) An Act of Correction from the Louisiana Office of State Lands correcting the 1936 Certificate of Redemption by Virgil Nobles to clarify the typographical error and have the certificate state that the property was sold to the State on the “30th day of September, 1920 ” instead of the “30th day of September, 1930.” (Emphasis added.)
The Zodiac Group filed a motion for summary judgment stating that there are no genuine issues of material fact, arguing that the Gulotta jurisprudence cited by the Supreme Court bars the Mayronne Group from challenging the validity of the 1925 sale because the five-year constitutional peremption period has run. In response, the Mayronne Group also filed a motion for summary judgment, arguing 17that the Act of Correction addressed the factual gaps in the record mentioned by the Supreme Court and therefore the 1925 tax sale is an absolute nullity per Waterman.
In its written judgment denying the Zodiac Group’s motion for summary judgment and granting the Mayronne Group’s motion for summary judgment, the trial court stated that the Supreme Court decision did not bar the Mayronne Group from asserting any further challenges to the 1925 tax sale and that Gulotta was distinguishable from the “absolute nullity issue at hand.” The court found that, at the time of the 1925 sale, Lot 4 belonged to the State, therefore the tax sale could be set aside even after the preemptive period had expired according to the jurisprudence set forth in Waterman. The court further found that the gaps in the Mayronne Group’s title were resolved by the Act of Correction and the quitclaim deed, and that acquisition of title through acquisitive prescription was precluded because both parties agree that Lot 4 is totally underwater and incapable of corporeal possession.
DISCUSSION
Appellate courts review summary judgments de novo using the same criteria that govern the trial court’s determination of whether summary judgment is appropriate. Smitko v. Gulf S. Shrimp, Inc., 11-2566 (La.7/02/12), 94 So.3d 750, 755. A motion for summary judgment is a procedural device used when there is no genuine issue of material fact for all or part of the relief prayed for by the litigant. The procedure is designed to secure the just, speedy, and inexpensive determination of every action. A mover is entitled to summary judgment if the pleadings, depositions, answers to interrogatories, and admissions on file together with the affidavits, if any, show that that there is no genuine issue as to material fact, and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966; Duncan v. U.S.A.A. Ins. Co., 06-363 (La.11/29/06), 950 So.2d 544, 546-547. A fact is material if it potentially insures or precludes recovery, affects a litigant’s ultimate success, or determines the outcome of the legal dispute. Smith v. Our Lady of the Lake Hosp., 93-2512 (La.7/05/94), 639 So.2d 730, 751. A genuine issue of material fact is one as to which reasonable persons could disagree; if reasonable persons could reach only one conclusion, there is no need for trial on that issue and summary judgment is appropriate. Hines v. Garrett, 04-0806 (La.6/25/04), 876 So.2d 764, 765-66.
*263 The Zodiac Group specifies 18 errors of law and fact which can be summarized as follows: the five-year peremption period contained within Article X, Section 11 of the 1921 Louisiana Constitution prevents any attacks on the validity of the sale; there are only two exceptions to the constitutional five-year peremption on attacks on tax sales: lack of an 'assessment, and payment of taxes before the sale, neither of which apply; the Supreme Court’s ruling which held Gulotta as dispositive of the lack of notice issue should bar any attack on the validity of the 1925 tax sale; any attempt to invalidate a tax sale because the property in question had been adjudicated to the State must fail because the Louisiana Constitution allows prescription or peremption to run against the State by implication; and the court did not consider Louisiana’s strong public policy in favor of protecting tax sales and tax sale purchasers.
The Zodiac Group contends that all attacks to the 1925 tax sale must be barred because the five-year constitutional per-emptive period has run and the only two exceptions enumerated in La. Const, art. X, § 11 (1921) do not apply.[3] 19However, Louisiana courts have found there are many exceptions not enumerated in the. Constitution that would, render a tax sale null and void. As the Louisiana First Circuit articulated in Warner v. Garrett, 268 So.2d 92, 97 (La.App. 1st Cir.1972):
It is well established that certain nullities attending tax sales are relative and are cured by the three and five year prescriptive periods provided by La. Const, art. X, § 11, and the statutes enacted by the legislature from time to time. Among these are failure to properly advertise (Robinson v. Williams, 45 La.Ann. 485, 12 So. 499 (1893)); lack of notice (Skannal v. Hespeth, 196 La. 87, 198 So. 661 (1940)); and sale for taxes which have prescribed (Fellman's Heirs v. Interstate Land Co., 163 La. 529, 112 So. 405 (1927)). Defects which have been held to render tax sales absolutely null, and therefore incurable by prescription, include prior payment of taxes and dual assessment (Gremillion v. Daigrepont, 47 So.2d 363 (La.App. 2nd Cir.1950)); lack of assessment (Tillery v. Fuller, 190 La. 586, 182 So. 683 (1938)); inadequate description (Yuges Realty v. Jefferson Parish Developers, 205 La. 1033, 18 So.2d 607 (1944)), and fraud (Wall v. Hamner, 182 La. 1049, 162 So. 769 (1935)).[4]
*264 Following this illustration of the jurisprudence in Warner, we look to the record to determine if there exists any defect or irregularity in the 1925 tax sale that would be considered a relative nullity which would have been cured by the five-year peremptive period provided by 1921 Louisiana Constitution Article X, Section 11, or an absolute nullity which would render the tax sale completely void ab initio.
The Mayronne Group argues that such an absolute nullity does exist in this case because at the time of the tax sale in 1925, Lot 4 had already been adjudicated to the State. In Waterman, the Louisiana Supreme Court held that a tax sale may be absolutely null and void where property has been adjudicated to the State and not redeemed in time and manner provided by the statute because the taxing offices of the State are without power to assess and sell the property as belonging to the 11flformer owner or any other person. Waterman, 213 La. at 617, 35 So.2d 225. This holding is consistent with other well established jurisprudence as well as La. C.C. art. 2452: “[t]he sale of a thing belonging to another is null.”[5]
The case of Thomas v. Bomer-Blanks Lumber Co., 105 So.2d 299 (La.App. 1st Cir.1958), cited by the Zodiac Group, illustrates the application of the principal set forth in Waterman to declare a tax sale null and void many years after the per-emptive period has run. In that case, the disputed property had been adjudicated to the State of Louisiana for non-payment of 1917 taxes under a prior owner’s name. While title was still vested with the State, the property was sold in 1925 for nonpayment of 1924 taxes. The defendant argued, as the Zodiac Group does here, that the running of the constitutional per-emptive period prevented any attacks on the tax sale and that only proof of prior payment of taxes or corporeal possession of the property would constitute exceptions to the running of the peremptive period. The plaintiff argued, as the May-ronne Group does here, that the 1925 tax sale for non-payment of 1924 taxes was absolutely null because the property could not have been sold for non-payment of taxes while title was in the State from a prior adjudication. The court held in favor of the plaintiff that the 1925 tax sale was an absolute nullity, citing Waterman and its predecessor, Board of Commisioners v. Concordia Land & Timber Co., 141 La. 247, 74 So. 921 (1916).
The Zodiac Group argues that the principle set forth in Waterman and Concordia should be disregarded as dictum and that Article XIX, Section 16 of the 1921 Louisiana Constitution provides that prescription or peremption can arise by implication against the State if it is based on another article in the Constitution |nitself. La. Const, art. XIX, § 16 (1921) clearly states: “Prescription shall not run against the State in any civil matter, unless otherwise provided in this Constitution or expressly by law.” Furthermore, the Louisiana Supreme Court has held that the language in this provision bars both prescription and peremption from running against the State. Flowers, Inc. v. Mrs. Lucy Reid Rausch, 364 So.2d 928, 931 (La.1978). La. Const, art. X, § 11 (1921), governing when a tax sale may be set aside, contains no language expressly stating that the per-emptive period described therein runs against the State, and contains no refer *265 ence to La. Const, art. XIX, § 16 (1921), which bars peremption or prescription from running against the State in civil matters. The Zodiac Group’s argument is without merit and unsupported by a plain reading of the Constitutional provisions. When a property has been previously adjudicated to the State for unpaid taxes, the peremptive period provided in La. Const, art. X, § 11 (1921) does not run against the State while the property remains in the State’s ownership.
In its comments on the issue before us in this case, the Supreme Court acknowledged that the jurisprudence in Waterman could be applied to declare the 1925 tax sale absolutely null and void, but declined to do so because of factual gaps in the record and recognition of the possibility for acquisitive prescription. Both parties expressly decline any claims of ownership through acquisitive prescription, and we, like the trial court, find that the Act of Correction and quitclaim deed have adequately addressed factual gaps in the record that was of concern to the Supreme Court. Having determined that Lot 4 had previously been adjudicated to the State at the time of the 1925 tax sale, we find that sale to be absolutely null and void.
| ^CONCLUSION
On de novo review, we find that no genuine issues of material fact remain, and that the Mayronne Group is entitled to judgment as a matter of law. We therefore affirm the trial court’s summary judgment in favor of the Mayronne Group.

AFFIRMED

. The "Mayronne Group” consists of appel-lees Allen Kent Jones, Joseph K. Handlin, II, Huey J. Mayronne, George J. Mayronne, Jr., Agatha B. Mayronne Haydel, Phyllis Bridge-water Mayronne, Testamentary Executrix of the succession of Oswald Harry Mayronne, and Jacqueline A.L. Jones.

. Both the Zodiac Group and the Mayronne Group have declined to take up this argument on the present appeal, conceding that corporeal possession was not possible for the underwater property.

. La. Const, art. X, § 11 (1921) provides as follows: When a tax sale may be set aside. No sale of property for taxes shall be set aside for any cause, except on proof of payment of taxes for which the property was sold prior to the date of the sale, unless the proceeding to annul is instituted within six months from service of notice of sale, which notice shall not be served until the time of the redemption shall have expired and within three years from the date of the recordation of the tax deed, if no notice is given. The fact that taxes are paid on a part of the property sold, prior to the sale thereof, or that part thereof was not subject to taxation, shall not be cause for annulling the sale as to any part thereof on which the taxes for which it was sold were due and unpaid, provided that the provisions hereof shall not affect any pending suit, nor any suit which may be brought within a period of twelve months from the date of the adoption of this Constitution, ■ in which any tax sale is sought to be annulled for any of said causes.

. Of this nonexhaustive list of nullities, lack of notice has been settled. As previously noted,the issue of whether a lack of notice is a relative nullity per Gulotta or an absolute nullity per Mennonite was determined previously in this case by the Louisiana Supreme Court when it held that Mennonite could not retroactively apply to the 1925 tax sale. The other defects listed in Warner have not been raised by the parties.

. See Gram Realty Co. v. Northern Homes, Inc., 308 So.2d 502, 504 (La.App 1st Cir.1975): “[t]he prescriptions of three and five years cannot cure a defect in a tax sale which is absolutely null and void ... no preemptive or prescriptive period can breathe life into something that never existed.” See also Smitko, supra at 759, where the Supreme Court noted that tax sales which are absolute nullities may be attacked at any time.